UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
                                        )
JANE DOE and JOHN DOE                   )
Individually and on behalf of their minor child,   )
JILL DOE                                )           Civil Action No. 11-11593
                                        )
           Plaintiffs,                  )
                                        )
     v.                                 )
                                        )
ANN BRADSHAW, STEPHEN WEIXLER,          )
ALAN WINROW, JANE DAY, PAT FARRELL,     )
CARLA THOMAS, MASHPEE SCHOOL            )
COMMITTEE, and THE TOWN OF MASHPEE      )
                                        )
           Defendants.                  )
                                        )
```

## COMPLAINT AND DEMAND FOR JURY TRIAL

1.      This is an action seeking redress for the denial of equal educational opportunity,

violation of civil rights, and the severe physical, emotional and psychological harm caused by the

defendants. The defendants at all times acted with deliberate indifference in their failure to

properly supervise and train employees, as well as their failure to properly investigate prior

disclosures of sexual abuse by an employee, Steven Weixler, which resulted in the sexual assault

of Jill Doe by Weixler, the then paraprofessional and soccer coach at Mashpee High School. The

defendants further acted with deliberate indifference in their failure to properly and adequately

respond to Jill's disclosure of the sexual assault, and to provide services to her to address the

educational, social and emotional harms she suffered as a result.

2.      The plaintiffs seek relief pursuant to 42 U.S.C. § 1983, 29 U.S.C. 794, 20 U.S.C.

1400 et seq., Mass. Gen. L. c. 12 § 11(I), 42 U.S.C. § 12131, 20 U.S.C. § 1681, Mass. Gen. L. c.

1

258 § 2, Mass. Gen. L. c. 93 § 102, Massachusetts common law and the Constitutions of the United States and the Commonwealth of Massachusetts.

## PARTIES

3.     The plaintiff, Jane Doe, is an adult resident of Mashpee, Massachusetts. Jane is the mother of the minor child, Jill, and brings this action individually and as the next friend of Jill.

4.     The plaintiff, John Doe, is an adult resident of Mashpee, Massachusetts. John is the father of the minor child, Jill, and brings this action individually and as the next friend of Jill.

5.     During all or a portion of the relevant period, the plaintiff, Jill Doe was a minor student attending Mashpee High School and a resident of Mashpee, Massachusetts.

6.     The defendant, Mashpee School Committee ("the School Committee"), is the civil entity responsible for operating and governing the public schools in the Mashpee School District, including Mashpee High School, where Jill was a student during all or a portion of the times relevant to this action.  The Mashpee School District ("District") is a recipient of federal financial assistance, including federal financial assistance provided to the District's schools and special education programs. The School Committee operates in Mashpee, Massachusetts, and operates under color of state law.  Defendant, acting through its members, and through the Superintendent, defendant Ann Bradshaw, personally participated and/or directed actions which they knew or reasonably should have known violated Jill's constitutional rights.

7.     The defendant, the Town of Mashpee Massachusetts ("Mashpee"), is the civil entity that oversees the activities of the Mashpee School Committee.  Mashpee is located in the Eastern District of Massachusetts, and operates under color of state law.  Defendant Mashpee, acting through its School Committee and through the Superintendent, defendant Ann Bradshaw,

personally participated and/or directed actions which they knew or reasonably should have known violated Jill's constitutional rights.

8.     The defendant, Ann Bradshaw ("Bradshaw"), is an adult residing in the Commonwealth of Massachusetts. She was and remains employed by Mashpee and the School Committee as the Superintendent of the Mashpee School District and, as such, operated under color of state law at all times relevant to this action. During the period pertinent to this Complaint, Defendant Bradshaw was acting within the scope of her authority as an employee of Mashpee and the School Committee. As Superintendent, Bradshaw was the individual primarily responsible for formulating and implementing policies and ensuring that the School Committee followed the law, including, but not limited to, equal access to education and equal treatment for all students, and was the ultimate authority and decision-maker of the School Committee. Bradshaw personally participated in and directed actions which she knew or reasonably should have known violated Jill's rights under the United States Constitution and Massachusetts state law. She is being sued individually and in her official capacity as Superintendent of Schools.

9.     The defendant, Stephen Weixler ("Weixler"), upon information and belief, is an adult residing in the Commonwealth of Massachusetts. He was  employed by Mashpee and the School Committee as a paraprofessional in the Student Support Center and as the Varsity Assistant Coach and Junior Varsity Coach of girls' soccer at Mashpee High School during the 2007-2008 and 2008-2009 school years, prior to his termination on March 21, 2009.  As such, he operated under color of state law at all times relevant to this action.  During the period pertinent to this Complaint, Defendant Weixler was acting within the scope of his authority as an employee of Mashpee and the School Committee. Weixler personally participated in actions which he knew or reasonably should have known violated Jill's rights under the United States

3

Constitution and Massachusetts state law. He is being sued in both his individual and official capacities.

10.     The defendant, Alan Winrow ("Winrow") is an adult residing in the Commonwealth of Massachusetts. He was employed by Mashpee and the School Committee as the Principal of Mashpee High School and, as such, operated under color of state law during all or a portion of the times relevant to this action. During the period pertinent to this Complaint, Defendant Winrow was acting within the scope of his authority as an employee of Mashpee and the School Committee. As Principal, Winrow had the responsibility and authority to oversee the welfare of students in Mashpee High School, and had immediate responsibility for the policies and procedures of the school. Winrow personally participated in and directed actions which he knew or reasonably should have known violated Jill's rights under the United States Constitution and Massachusetts state law. He is sued in both his individual and official capacities.

11.     The defendant, Jane Day ("Day") is an adult residing in the Commonwealth of Massachusetts. She was employed by Mashpee and the School Committee as the Assistant Principal of Mashpee High School during all or a portion of the period pertinent to this Complaint. She is now the Principal of Mashpee High School. In both her current and former capacities, Defendant Day operated under color of state law at all times relevant to this action. During the period pertinent to this Complaint, the defendant Day was acting within the scope of her authority as an employee of Mashpee and the School Committee. As Principal, Day has the responsibility and authority to oversee the welfare of students in Mashpee High School, and has immediate responsibility for the policies and procedures of the school. As Principal and Assistant Principal, Day personally participated in and directed actions which she knew or

4

reasonably should have known violated Jill's rights under the United States Constitution and Massachusetts state law. She is sued in both her individual and official capacities.

12. The defendant, Carla Thomas ("Thomas"), is an adult residing in the Commonwealth of Massachusetts. She was employed by Mashpee and the School Committee as the Director of Special Education for the Mashpee School District, and as such, operated under color of state law during all or a portion of the period pertinent to this Complaint. During all or a portion of the period pertinent to this Complaint, Defendant Thomas was acting within the scope of her authority as an employee of Mashpee and the School Committee. In her capacity as the Director of Special Education, Defendant Thomas was the person primarily responsible for formulating and implementing policies and ensuring that the School District complied with legal requirements under the Individuals with Disabilities Education Act, 20 U.S.C. 1400 et seq. ("IDEA") and section 504 of the Rehabilitation Act, 29 U.S.C. 794 ("Section 504"). Thomas personally participated in and directed actions which she knew or reasonably should have known violated Jill's rights under the United States Constitution and Massachusetts state law. She is sued in both her individual and official capacities.

13. The defendant, Patricia Farrell, is an adult residing in the Commonwealth of Massachusetts. She was  and remains employed by Mashpee and the School Committee as guidance counselor at Mashpee High School and, as such, operated under color of state law at all times relevant to this action. During the period pertinent to this Complaint, Defendant Farrell was acting within the scope of her authority as an employee of Mashpee and the School Committee. In her role as a guidance counselor, Defendant Farrell had the responsibility and authority to oversee the welfare of students in Mashpee High School, and had immediate responsibility for the implementation of policies and procedures of the school, including

5

ensuring that the School District complied with legal requirements under IDEA and Section 504. Farrell personally participated in and directed actions which she knew or reasonably should have known violated Jill's rights under the United States Constitution and Massachusetts state law. She is sued in both her individual and official capacities.

## JURISDICTION AND VENUE

14.     Jurisdiction of this court is invoked under the provisions of §§ 1331and 1343(3) of Title 28 and Sections 1983 and 1988 of Title 42 of the United States Code, Section 1400 et seq. of Title 20 of the United States Code, Section 794 of Title 29 of the United States Code and Section 42 U.SC. 12132 of Title 42 of the United States Code.

15.     Pursuant to § 1367(a) of Title 28, this court has pendant jurisdiction over the plaintiffs' state law claims for violations of the Massachusetts Civil Rights Act, Mass. Gen. L. c. 12 § 11(I), Mass. Gen. L. 258 § 2, and Mass. Gen. L. 231 § 85X.

16.     Venue properly lies in this judicial district pursuant to Section 1391 of Title 28 of the United States Code as the claims arose in this judicial district.

## FACTS

17.     In or about November 2008, Defendant Weixler, using his position as Jill's soccer coach and employee of Mashpee and the School Committee, coerced her into her into his car, drove her to a remote location and sexually assaulted her. The sexual assault caused Jill severe emotional and physical harm.  Jill did not immediately report the assault.

18.     Weixler later pleaded guilty to indecent assault of a minor regarding his sexual assault against Jill in December, 2009.  He also pleaded guilty to distribution of obscene matter

6

to a minor in connection with his texting of pictures of his penis to Jill, and the sale or delivery of liquor to a person under 21.

19.     Defendant Weixler's mother, Susan Weixler, is a citizen of majority age residing in Mashpee.  She was and remains employed by Mashpee and the School Committee as an Administrative Assistant at Kenneth C. Coombs School, which is part of the Mashpee public school system.  Upon information and belief, the Mashpee defendants provided preferential treatment in the screening, hiring, evaluation, supervision and investigation of defendant Weixler as a result of his relation to Susan Weixler.

20.     In February, 2008, ten months before Jill was sexually assaulted by Defendant Weixler, it was reported to supervisory personnel of Mashpee High School and/or the Mashpee School Committee that Weixler was engaged in inappropriate and/or sexual conduct with another minor, who was a student at Mashpee Schools.

21.     Despite being put on notice of Weixler's conduct, the defendants failed to take reasonable steps to investigate Weixler's conduct and discipline him and/or remove him from the school.

22.     Upon information and belief, Weixler's supervisor interviewed only Weixler, who denied the aforementioned conduct. The supervisor concluded that no further investigation was necessary solely on the basis that "Weixler's body language [and] tone of voice [indicated] he is telling the truth."

23.     Despite being put on notice of Weixler's criminal conduct, the defendants failed as mandated reporters to contact the Department of Children and Families and/or the Mashpee Police Department to properly investigate the allegations of sexual abuse against Weixler.

7

24.     Despite being put on notice of Weixler's criminal conduct, the defendants failed
to properly supervise Weixler to prevent his continued abuse and sexual assaults of minor
students at Mashpee Public Schools.

25.     Mashpee High School encourages students to participate in various athletic
programs offered by the school. During the fall of 2008, Mashpee openly recruited female
students to participate in their Interscholastic Girls' Soccer Program.

26.     In his role as the Girls' Junior Varsity Soccer coach, defendant Weixler, was left
unsupervised with the minor female students on his team for extended periods of time.

27.     During the 2008-2009 school year, Jill was a 14-year-old freshman at Mashpee
High School and a member of the Girls' Junior Varsity and Varsity Soccer Teams.

28.     Just prior to the start of the school year in July, 2008, Jill's cousin was hit by a car
and killed while crossing the street.

29.     As a result of her cousin's tragic death, Jill became anxious and depressed and
was unable to attend her summer school MCAS preparation program.

30.     Upon the start of the school year, Jane Doe contacted Defendant Farrell and told
her that Jill's cousin had been killed and that Jill appeared depressed and anxious as a result.

31.     From September 2008 through October 2008, Jill exhibited signs of depression
and anxiety to administrators and staff at the school, including but not limited to Defendant
Farrell, John Dolan, an Adjustment Counselor at Mashpee High School, her individual teachers,
and soccer coach, defendant Weixler.

32.     During that period, defendant Weixler, acting as an employee of Mashpee and the
School Committee, used his position of trust as soccer coach and paraprofessional, as well as the

8

knowledge that Jill was emotionally vulnerable as a result of the loss of her cousin, to engage a "friendship" with Jill and to groom her to be a victim of sexual abuse.

33.     Jill had no other knowledge of and/or relationship with defendant Weixler, except in his capacity as an employee of Mashpee and the School Committee.

34.     In or about October, 2008, Defendant Weixler, acting as an employee of Mashpee, drove Jill home from soccer practice, at which time he sexually assaulted her by massaging her leg with his hand.

35.     In or about November, 2008, Defendant Weixler committed sexual assault against Jill as set forth in Paragraph 18.

36.     Both before and after the sexual assault, from September 2008 through March 2009, Defendant Weixler engaged in a pattern of sexually harassing and abusing Jill at the School.  Among his most egregious actions, Weixler texted pictures of his penis to Jill, repeatedly asked her to send him naked pictures of herself and verbally harassed her in the hallways at school.  This conduct, which caused Jill further emotional injury, continued within the school and was observed and/or observable, until Jill disclosed the rape in March of 2009.

37.     From November of 2008 through March, 2009, Jill exhibited escalating signs of severe trauma including escalating emotional outbursts, difficulty completing assignments, insubordination in class, failure to attend class, anxiety, depression, substance abuse, and self-injurious behavior such as cutting and burning herself, which symptoms manifested themselves in school, at home and in the community.

38.     Pursuant to "Child Find" provisions of IDEA and/or Section 504, Defendants have an obligation identify, locate and evaluate all children with disabilities, regardless of the severity of their disabilities.

39.    The IDEA and Section 504 require that all qualified persons with disabilities
within the jurisdiction of a school district are entitled to a free appropriate public education
("FAPE"). A student's right to FAPE is realized through the implementation of an Individual
Education Plan ("IEP") under the IDEA and a written accommodation plan under Section 504.
To be appropriate, education programs for students with disabilities must be designed to meet
their individual needs to the same extent that the needs of nondisabled students are met.  In order
to receive a FAPE, the child must receive meaningful educational benefit.

40.    The defendants disciplined Jill for this behavior, but failed to request an
evaluation to identify the cause of the escalating signs of trauma.

41.    In February, 2009, Jill's parents met with Defendants Winrow and Day as well as
Janet McFarlane, Assistant Chief Probation Officer of the Barnstable County Juvenile Court
Department, and Laura Roach, a representative from the Department of Children and Families, to
discuss Jill's behavior.  At that time, the Parents requested help for Jill in light of her behavior,
which behavior was later confirmed to be trauma-induced.

42.    Jill's parents were not informed by Winrow or Day of Parents' Rights under
IDEA or Section 504. Instead, the school recommended that the parents file a Child in Need of
Services ("CHINS") petition asking the Juvenile Court to intervene in the matter.

43.    During this period, Jill remained enrolled in regular education classes, despite the
fact that her emotional well-being continued to deteriorate, her grades declined and she could not
access her classes.  Instead, Jill sat in the guidance office repeatedly, was frequently truant, and
demonstrated emotional outbursts in school.

44.    In January, 2009 it was again reported to supervisory personnel of Mashpee
and/or the Mashpee School Committee, by an employee of the Boys and Girls Club, that students

10

had reported to him that Weixler was engaged in an inappropriate sexual relationship with one or more minor students, other than Jill, at Mashpee High School.

45.     Despite being put on notice on at least one prior occasion of Weixler's criminal conduct, the defendants continued to fail to take reasonable steps to investigate and remedy Weixler's conduct and remove him from the school.

46.     Defendants Day and Winrow conducted an investigation, supervised by Defendant Bradshaw, interviewing only Defendant Weixler, the minor about whom the report was made, and the friend of the minor about whom the report was made.  On the basis of their denials, Winrow and Day concluded their investigation.

47.     Despite being put on notice on at least one prior occasion of Weixler's criminal conduct, the defendants failed as mandated reporters to contact the Department of Children and Families and/or the Mashpee Police Department to properly investigate the allegations of sexual abuse against Weixler.

48.     On or about March 6, 2009, a student reported to school officials that defendant Weixler was inappropriately texting students and that he had purchased alcohol for students. Following this report, Defendant Weixler was placed on administrative leave for the first time while these allegations were investigated by the school.

49.     On or about March 9, 2011, the defendants notified the police, for the first time, of the reports of sexual abuse by Defendant Weixler.

50.     Defendants Town of Mashpee, the School Committee, Bradshaw, Winrow and Day, knew or should have known, since February 2008, of defendant Weixler's escalating pattern of harassment and /or sexual abuse of Mashpee students, but failed to properly

11

investigate and/ or report charges of abuse by Weixler to law enforcement personnel and/or remove defendant Weixler from the school until March 10, 2009.

51.    In early March 2009, Jill told a friend that Weixler had raped, harassed and abused her. The friend then notified Jane Doe.

52.    On or about March 9, 2009, the Parents reported the misconduct to the school, and met with John Dolan, Alan Winrow and Jane Day. At or around the time of that meeting, Mashpee recommended that Jill be enrolled in an Anger Management Program/group therapy in the school directed by John Dolan.

53.    None of the defendants recommended that Jill be evaluated to determine the nature and extent of the emotional harm suffered by Jill as a result of the sexual assault, nor did they inform the Does of their right to request such an evaluation.

54.    On March 12, 2009, Mashpee reported the allegations of sexual assault and abuse by Defendant Weixler against Jill to the Mashpee Police Department, which then investigated the matter and brought charges against Defendant Weixler.

55.    In March 2009, defendants Bradshaw, Winrow and Day facilitated a meeting open to all Mashpee Public School parents to discuss the sexual abuse by and arrest of the Defendant Weixler, which had become known to the public as a result of multiple newspaper articles regarding the rape.

56.    The newspaper articles did not disclose Jill as the victim of the rape, but provided a description of the rape victim noting that the "girl is a freshman at the high school and a player on Weixler's team."

57.    No employee or agent of Mashpee proposed to the Does and/or created a plan with the Does to protect the identity of Jill as the rape victim, or to protect Jill from peer bullying

and harassment related to the disclosure of the rape and subsequent and termination of Defendant Weixler.

58.     The Children's Cove ("Cove"), is a child's advocacy organization designed to ensure that minor victims of sexual abuse and their family members have access to support and services. The Cove also coordinates and provides on-going education to the community on recognizing, reporting, responding and prevention of child sexual abuse and assists in responding to community crisis situations that require education and intervention.

59.     As a result of the criminal complaint against Defendant Weixler in connection with the rape of Jill, the Cove provided consultation services to Mashpee Public Schools regarding the handling of the disclosure of the sexual assault and its impact on the students.

60.     Upon information and belief, the Cove recommended that Mashpee Schools conduct small group discussions with the students to discuss the sexual assault.

61.     Upon information and belief, a decision was made by one or more of the Defendants to disregard the Cove's recommendation, and instead the defendants held a school-wide assembly to discuss the sexual abuse by and arrest of the Defendant Weixler.

62.     On March 17, 2010, Jill did not attend the assembly, and did not attend school. Upon information and belief, Jill was the only student on the junior varsity girls' soccer team who did not attend the assembly, which fueled speculation regarding her identity as the sexual assault victim.

63.     At that assembly, a student raised her hand and made a public comment to the effect of "I heard that the victim asked for it."

64.     After the assembly, students continued to speculate as to Jill's identity as the victim, and began to bully, harass, taunt and criticize Jill within the school and on social media networks.

65.     From March, 2009 through May, 2009, Jill exhibited significant signs of emotional disabilities that rendered her unable to access her education.

66.     The IDEA includes a "Child Find" mandate that requires all school districts to identify, locate and evaluate all children with disabilities to determine eligibility for special education services.

67.     According to Mashpee Public School's Child Find Procedures and Guidelines for Implementing IDEA Procedures, a student experiencing difficulty in school should be referred to the school's Child Study Team, where an Accommodation Plan can be developed to meet the needs of the child. The Child Study Team serves as the gateway to services.

68.     If the needs identified by the Child Study Team warrant, the school must request an evaluation for eligibility for special education services.

69.     A student diagnosed with an emotional disturbance that prevents the student from accessing her education qualifies for special education services under the IDEA and/or accommodations under Section 504.

70.     Jill was discussed by members of the Child Study Team thirteen (13) times between February 25, 2009 and April 7, 2010, but the Team did not make any recommendation that Jill be evaluated to determine eligibility for special education services, despite symptoms of emotional disturbance and inability to access her education.

14

71.     After the disclosure by the Does to the Defendants of the sexual assault by
Weixler, and despite Jill's lack of academic and behavioral progress since February 25, 2009, the
team again recommended only general education accommodations.

72.     The general education accommodations provided by the Defendants were
insufficient, and from March, 2009 through January, 2010, Jill's emotional health deteriorated
significantly, and her deprivation of access to public education intensified.

73.     On multiple occasions from March, 2009 through January, 2010, Jane Doe
repeatedly sought assistance and services from the defendants through discussions with
Defendants Farrell and Day, as well as individual teachers employed by the Town of Mashpee
and the Mashpee School Committee.

74.     From March, 2009 through January, 2010, the defendants continued to fail under
their child find obligations to identify Jill as a student in need of special education services
and/or accommodations under IDEA and Section 504.

75.     On January 18, 2010, Jill was admitted at Falmouth Hospital by her mother
following manifestation of significant symptoms of post-traumatic stress disorder and other
emotional difficulties.

76.     On or about January 21, 2010, Jill was transferred to the Community Based Acute
Treatment (CBAT) Unit at Saint Vincent's Home as a result of her symptoms of post-traumatic
stress disorder, which included intrusive thoughts, flashbacks and nightmares, emotional
numbness, suicidal ideations and cutting and burning herself with cigarettes.

77.     On January 21, 2010, while at St. Vincent's Home, Jill was examined by her
treating psychiatrist, Dr. Miriam Mazor and diagnosed with PTSD, Mood Disorder NOS, R/O
Bipolar and Poly-Substance Abuse with probable emerging borderline personality disorder,

which confirmed Jill's need for a comprehensive evaluation and her eligibility for services under the IDEA and Section 504.

78.     Jill was discharged by St. Vincent's on February 3, 2010 and returned to Mashpee Public Schools.

79.     By this time, rumors had circulated among Jill's peers that Jill had been locked up in a pysch ward. Upon return to school, Jill continued to be harassed, taunted and criticized by her peers.

80.     Following Jill's discharge from St. Vincent's Home, Jane Doe brought the discharge summary by Dr. Mazor to Mashpee High School and met with Defendant Farrell seeking services for Jill.   Defendant Farrell did not recommend an evaluation for special education services. Rather, Ms. Doe was told by Farrell that there were no services for students in the 10th grade, and that Jill could go to guidance during the day if she had issues.

81.     Although Jill continued to demonstrate escalating episodes of emotional disturbance in the school as well as frequent truancy and absence after February 3, 2010, Mashpee did not recommend any evaluation for special education despite their obligation under IDEA and Section 504 to do so, nor did they inform the parents of their rights under IDEA and Section 504 to request such an evaluation.

82.     After multiple verbal requests for assistance from the school, on March 18, 2010, and again on April 6, 2010, Jane Doe sent written requests, with the assistance of an education advocate, that Mashpee evaluate Jill for eligibility for special education services or accommodations pursuant to the IDEA and/or Section 504.

83.     Despite their actual knowledge that Jill was subjected to an inadequate educational environment, the defendants failed to take steps to remedy this environment, or to provide Jill with the necessary educational supports.

84.     In late March 2010, as the result of a recommendation by the School that the Does file a Child in Need of Services petition, the Does filed a CHINS petition and Jill was adjudicated a Child in Need of Services. Jill exhibited extreme symptoms of PTSD, including an outburst at the court, which resulted in hospitalization at Arbor Fuller Hospital on April 7, 2010.

85.     On April 16, 2010, Jill was transferred to the Germaine Lawrence Community Based Acute Treatment ("CBAT") Unit for stabilization and treatment.

86.     In light of Jill's severe emotional disabilities, her propensity to run away, and polysubstance abuse, the Does requested placement by Mashpee in a residential therapeutic school in order to protect her safety and provide specialized educational services.  On May 13, 2010, Mashpee refused such placement.

87.     On May 27, 2010, fourteen months after Jill disclosed that she was raped by Defendant Weixler, Mashpee determined for the first time that Jill was eligible to receive special education and related services.  Mashpee agreed to extend Jill's residential placement at Germaine Lawrence for purposes of a forty-five (45) day extended evaluation.

88.     Based upon the results of the extended evaluation, and Jill's continued propensity to run away, the Parents requested that Jill be placed in a therapeutic residential school.

89.     Mashpee refused the Parents' request for a residential therapeutic placement.

90.     On July 2, 2010, Jill ran away from home and was gone for over a week.

91.     On July 8, 2010, an IEP meeting was held and it was determined by the team, for the first time, that Mashpee would fund a residential educational placement for Jill at the F.L. Chamberlain School.

92.     Parents accepted this IEP and placement on July 14, 2010, and Jill was placed at Chamberlain on July 20, 2011.  She remains at that placement today.

93.     Jill continues to suffer symptoms of post-traumatic stress disorder and other emotional disabilities and.  In June, 2011, the Parents requested an alternative placement for Jill in light of her lack of progress at the Chamberlain School.  At a June 15, 2011 IEP Team Meeting, Mashpee denied this request.

94.     On August 16, 2011, Jill ran away from the Chamberlain School.  She returned the next day.

95.     Thereafter, Mashpee consented to explore an alternative placement for Jill.

96.     As a direct and proximate result of the facts described in paragraphs 1- Jill was deprived of her constitutional rights to bodily integrity and an equal education, as well as her right to a free and appropriate education pursuant to 20 U.S.C. § 1401(8).

97.     As a direct and proximate result of the defendants' actions and omissions, the minor plaintiff has suffered serious emotional and physical distress and interference with her education and academic performances.  She has incurred substantial legal and medical costs.  All damages continue to this date.

98.     As a result of the wrongful and negligent acts of each of the defendants, the plaintiff Jane and John Doe were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection and assistance, all to the detriment of their parent/child relationship.

18

99.     Pursuant to M.G.L. c. 258 § 4, on January 28, 2008, the plaintiffs served

Mashpee, the School Committee and the District with a presentment letter.

## COUNT I

### Violation of the Fourteenth Amendment to the United States Constitution, through 42 U.S.C. §1983 (Against Defendants Bradshaw, Winrow and Day)

100.    The plaintiffs reallege paragraphs 1 through 99, above and incorporate them

herein by reference.

101.    Each and every act and omission alleged here was done by the defendants not

only as individuals but also under the color and pretenses of the statutes, ordinances, regulations

customs and usages of the Commonwealth of Massachusetts and in the rules, policies and

direction of the Mashpee Public Schools, having been clothed with both actual and apparent

authority by the governing body, the School Committee and/or Mashpee.

102.    Defendants knew, or reasonably should have known that Weixler was engaging in

these acts and that his conduct would deprive Jill of her constitutional rights.

103.    Defendants failed to act in order to prevent this conduct.

104.    The actions of Defendant Weixler were condoned, encouraged and acquiesced to

by Defendants Bradshaw, Winrow and Day, who responded with deliberate indifference and

gross negligence towards Jill and other students in failing to properly train, supervise,

investigate, report and terminate Weixler.

105.    The plaintiff has been deprived by the defendants under color of law of the rights,

privileges and immunities secured by the Constitution and laws of the United States including

the right to be free from intrusions to her bodily integrity, the right to be free from discrimination

on the basis of her disability and gender, and the right to a free appropriate public education.

19

106.    As a direct and proximate result of such deprivation, the plaintiff suffered

physical injury, indignity, humiliation, severe emotional distress, mental anguish and invasion of

bodily integrity.

## COUNT II

Violation of the Due Process Clause of the Fourteenth Amendment
to the United States Constitution, through 42 U.S.C. §1983
(Against the Town of Mashpee, the School Committee, and Defendants Bradshaw, Winrow, and
Farrell in their Official Capacities)

107.    The plaintiffs reallege paragraphs 1 through 106, above and incorporate them

herein by reference.

108.    The defendants, after receiving allegations of abuse and unlawful conduct by

Weixler, remained deliberately indifferent and tacitly authorized the continuation of his wrongful

and criminal conduct.

109.    The defendants' failure to supervise Weixler and prevent or stop his abuse and

wrongful and criminal conduct caused the plaintiff to suffer sexual assault and repeated sexual

harassment.

110.    The defendants' policies were not adequate for purposes of training employees to

handle the usual and recurring situations with which they must deal.

111.    The defendants' failure to adequately train their employees in proper procedures

for investigating and responding to reports of abuse caused the plaintiff to suffer sexual assault

and repeated sexual harassment.

112.    The action and inaction of the defendants was part of a custom or policy of failing

to properly train their employees to investigate and report instances of abuse.

113.    The Defendant Mashpee School Committee was deliberately indifferent to the

obvious consequences of its failure to train and supervise its employees.

114.   As a consequence of such custom or policy, the plaintiff has been deprived by the defendants under color of law of the rights, privileges and immunities secured by the Constitution and laws of the United States including the right to be free from intrusions to her bodily integrity, the right to be free from discrimination on the basis of her disability and gender, and the right to a free appropriate public education.

115.   As a direct and proximate result of such deprivation, the plaintiff suffered physical injury, indignity, humiliation, severe emotional distress, mental anguish and invasion of bodily integrity.

## COUNT III

### Violation of the Due Process Clause of the Fourteenth Amendment
### to the United States Constitution, through 42 U.S.C. §1983
### (Against Defendant Weixler)

116.   The plaintiffs reallege paragraphs 1 through 114, above and incorporate them herein by reference.

117.   Each and every act alleged herein was done by Weixler not only as an individual but also under the color and pretenses of the statutes, ordinances, regulations customs and usages of the Commonwealth of Massachusetts and in the rules policies and direction of the Mashpee Public Schools, having been clothed with both and actual and apparent authority by the governing body, the School Committee and/or Mashpee.

118.   The plaintiff has been deprived by the defendant Weixler under color of law of the rights, privileges and immunities secured by the Constitution and laws of the United States including the right to be free from intrusions to her bodily integrity, the right to be free from discrimination on the basis of her disability and gender, and the right to a free appropriate public education.

119.    As a direct and proximate result of such deprivation, the plaintiff suffered physical injury, indignity, humiliation, severe emotional distress, mental anguish and invasion of bodily integrity.

## COUNT IV

### Violations of the Individuals with Disabilities Education Act, as amended, 20 USC § 1400 et seq., through 42 U.S.C. §1983 (Against Defendants Bradshaw, Winrow, Day, Farrell and Thomas)

120.    Plaintiffs re-allege paragraphs 1 through 118 above, and incorporate them herein by reference.

121.    Each and every act and omission alleged here was done by the defendants not only as individuals, but also under color and pretenses of the statutes, ordinances, regulations, customs and usages of the Commonwealth of Massachusetts, and in the rules, policies and direction of the Mashpee public Schools, having been clothed with both actual and apparent authority by the governing body, the school committee and/or Mashpee.

122.    Jill has a right to a free appropriate education ("FAPE") and a safe school environment as required by the IDEA, section 20 U.S.C. § 1412(a)(1).

123.    Pursuant to 20 U. S. C. § 1415 (a) Defendants are required to establish and maintain procedures to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of FAPE.

124.    Defendants violated Jill's rights under the Child Find provisions of IDEA when they failed to follow the policies outlined in Mashpee's Public Schools Child Find Procedures, and failed to timely evaluate Jill to determine eligibility for special education services upon notice that she failed to make educational progress even with general education accommodations.

125.    Defendants violated the rights of Jane and John Doe when they failed to guarantee the procedural safeguards of due process that would allow her parents to make appropriate decisions regarding services for Jill in connection with her disabilities.

126.    As a direct and proximate result of the defendants' violations under Child Find, Jill was denied a free appropriate public education ("FAPE") and a safe school environment as required by the IDEA.

127.    By failing to provide Jill with a free appropriate public education, plaintiff Jill has been deprived by the defendants under color of law of the rights privileges and immunities secured by the constitution and laws of the United States.

128.    By failing to comply with the IDEA, plaintiffs Jane and John have been deprived by the defendants, under color of law, of the rights, privileges and immunities secured by the constitution and laws of the United States.

129.    As of the date of this complaint, a Due Process hearing to exhaust administrative remedies is scheduled before the Bureau of Special Education Appeals for September 12, 2011.

## COUNT V

Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. 794
(Against the Town of Mashpee, the School Committee, and Defendants Bradshaw, Winrow, Day, Farrell and Thomas in their Official Capacities)

130.    The plaintiffs reallege paragraphs 1 through 128, above and incorporate them herein by reference.

131.    Section 504 requires recipients of federal funding to provide an appropriate education to all qualified handicapped persons who are in the recipient's jurisdiction, regardless or the nature of severity of the person's handicap.

23

132.    The Mashpee School District ("District") is a recipient of federal financial assistance, including federal financial assistance provided to the District's schools and special education and Section 504 programs.

133.    Recipients of federal financial assistance must provide regular or special education and related aids and services, designed to meet the individual educational needs of disabled persons as adequately as the needs of non-disabled persons are met.

134.    Pursuant to 29 U. S. C. § 794, defendants are required to establish and maintain procedures to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of FAPE.

135.    Defendants acted with deliberate indifference when they failed to conduct a timely evaluation of Jill in accordance with the school's established Section 504 procedures, even though they were on notice that Jill is a qualified individual with a disability.

136.    Defendants' failure to timely identify and evaluate Jill precluded her from receiving the appropriate accommodations and related services.

137.    As a direct and proximate result of defendant's violations as described above, Jill Doe was denied a free and appropriate public education as required under Section 504.

138.    As a direct and proximate result of defendant's violations as described above, Jane and John Doe were denied procedural safeguards with respect to the provision to Jill of a free and appropriate public education as required under Section 504.

139.    As a direct and proximate result of such deprivation, Jill suffered physical injury, indignities, humiliation, severe emotional distress, mental anguish, and invasion of bodily integrity.

## COUNT VI

(Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131)
(Against the Town of Mashpee, the Mashpee School Committee, and Defendants Bradshaw,
Winrow, Day, Farrell and Thomas in Their Official Capacities)

140.    The plaintiffs reallege paragraphs 1 through 138, above and incorporate them
herein by reference.

141.    Jill is a qualified individual with a disability in that she suffers from PTSD, Mood
Disorder NOS, R/O Bipolar and Poly-Substance Abuse with probable emerging borderline
personality disorder.   Jill's disorders substantially limit her ability to access her education.

142.    Jill's disabilities manifest themselves in such a way that she appears defiant and
oppositional.

143.    Instead of evaluating Jill, attempting to understand the manifestations of her
disabilities, and providing her with reasonable accommodations for purposes of accessing her
education, the defendants intentionally chose to ignore, punish and discriminate against Jill,
because to do otherwise, would require a significant amount of resources and attention.

144.    As a direct and proximate result of the defendants' ignorance, punishment, and
discrimination, Jill was excluded from participation in and/or denied the benefits of a Mashpee's
services and/or programs by reason of her disability.

## COUNT VII

Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681
(Against the Town of Mashpee, the Mashpee School Committee, and Defendants
Bradshaw, Winrow, Day in Their Official Capacities)

145.    Plaintiffs re-allege paragraphs 1 through 143 above, and incorporate them herein
by reference.

146.    Upon information and belief, the Mashpee School Committee by and through its agents, failed to appoint a Title IX coordinator, though mandated by Title IX of the Education Amendments of 1972 and 34 C.F.R. Part 106.8.

147.    Defendants had actual knowledge of the sexual discrimination, harassment and abuse inflicted upon Jill Doe by defendant Weixler and her peers.

148.    Defendants had the authority and ability to address the allegations of sexual discrimination, harassment and abuse by Weixler and the students, and to institute remedial and corrective measures to protect Jill Doe and provide for her safety and well-being.

149.    Defendants made a conscious decision to ignore the risks of sexual abuse, discrimination and harassment which were so severe, pervasive and objectively offensive as to deprive Jill of the educational benefits or opportunities provided by Mashpee High School.

150.    Despite having actual knowledge defendants demonstrated deliberate indifference in failing to take any action against Weixler and the students.

151.    As a direct and proximate result of such deprivation, Jill suffered physical injury, indignities, humiliation, severe emotional distress, mental anguish, and invasion of bodily integrity.

## COUNT VII

### Violation of the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I
### (against Defendant Weixler)

152.    Plaintiffs re-allege paragraphs 1 through 150 above, and incorporate them herein by reference.

153.   The Massachusetts Civil Rights Act guarantees all persons freedom from interference by threats, intimidation or coercion, with the exercise and enjoyment of their rights secured by the Constitution or laws of the United States or the Commonwealth.

154.   Defendant Weixler violated the plaintiff's rights under state and federal law to be free from harassment, threats, intimidation and/or coercion by subjecting Jill to violations of her right to bodily integrity.

155.   As a direct and proximate result of such deprivation, Jill suffered physical injury, indignities, humiliation, severe emotional distress, mental anguish, and invasion of bodily integrity.

## COUNT V

### Violation of the Equal Rights Amendment to the Massachusetts Declaration of Rights, Article CVI, Article I of Part the First of the Constitution
### (Against Defendants Bradshaw, Weixler, Winrow, Day, Farrell and Thomas in their Individual Capacities)

156.   Plaintiffs re-allege paragraphs 1 through 154 above, and incorporate them herein by reference.

157.   The Equal Rights Amendment to the Massachusetts Declaration of Rights ("ERA") guarantees that girls and women will have equal rights to those enjoyed by boys and men.

158.   Under the ERA, females have a right of Constitutional dimensions to be free of sex discrimination in education, including but not limited to sexual harassment.

159.   An educational environment pervaded by harassment or abuse, with resulting intimidation, humiliation, and stigmatization, poses a formidable barrier to the full participation of girls and women in schools, and violates the ERA.

160. Jill was subjected to an educational environment pervaded by severe and pervasive sexual harassment and abuse, which deprived her of equal access to an education, interfered with her academic achievement, and caused her to experience severe emotional and physical distress, including but not limited to PTSD.

161. Defendants, all of whom acted under color of state law, with knowledge that their actions violated the minor plaintiff's rights under the ERA, subjected her to discriminatory and disparate treatment.

162. Defendants violated plaintiff Jill's right to an equal education as guaranteed to her by the ERA. Defendants participated or directed these actions although they knew or reasonably should have known that these actions violated Jill's established constitutional right to equal protection.

## COUNT VIII
### (Negligence under M.G.L.c. 258 § 2)
### (Against the Town of Mashpee, the Mashpee School Committee, and Defendants Bradshaw, Winrow, Day, Farrell and Thomas)

163. The plaintiffs reallege paragraphs 1 through 161, above and incorporate them herein by reference.

164. The defendants owed a duty to exercise reasonable care for the protection of Jill against misconduct and inappropriate conduct and/or contact.

165. The defendants breached that duty by facilitating and failing to prevent misconduct and inappropriate conduct and/or contact in the form of sexual assault and harassment that they knew or should have known would occur by negligently hiring and failing to train, supervise, investigate and terminate defendant Weixler.

28

166.    By their actions and inactions, the defendants caused Jill to be subject to the abusive conduct described above.

167.    As a direct and proximate result of such violation, Jill suffered physical injury, indignities, humiliation, severe emotional distress, mental anguish, and invasion of bodily integrity.

## COUNT X

### Intentional Infliction of Emotional Distress
### (Against Defendants Bradshaw, Winrow, Day, Farrell and Thomas)

168.    The plaintiffs reallege paragraphs 1 through 166, above and incorporate them herein by reference.

169.    Defendants engaged in conduct which they knew or reasonably should have known was likely to result in emotional distress.

170.    Defendants conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community.

171.    As a direct and proximate cause of defendant's conduct caused the plaintiff suffered severe emotional distress of a nature that no reasonable person could be expected to endure.

## COUNT IX

### Negligent Infliction of Emotional Distress
### (Against the Town of Mashpee, the Mashpee School Committee, and Defendants
### Bradshaw, Winrow, Day, Farrell and Thomas)

172.    The plaintiffs reallege paragraphs 1 through 170, above and incorporate them herein by reference.

173.    Defendants owed a duty to plaintiffs to exercise reasonable care when assuming the care, responsibility, and supervision of Jill..

29

174.     Defendants were negligent and breached their duty to exercise reasonable care in providing a safe environment at Mashpee High School.

175.     As a result of defendants' conduct, plaintiffs have suffered severe emotional distress as more fully alleged herein.

## COUNT XI

### Loss of Consortium
### (Against All Defendants)

176.     The plaintiffs reallege paragraphs 1 through 174, above and incorporate them herein by reference.

177.     At all times relevant to this civil action, John was the father and Jane was the mother of Jill.

178.     As a direct and proximate result of the defendants' negligence, John and Jane have been deprived of the society, love, affection, companionship, care and services of their child, Jill, and are entitled to recovery for said loss pursuant to Mass. G.L.c. 231 § 85X.

179.     John and Jane seek all damages available against defendants on account of their loss of their daughter's consortium.

## RELIEF REQUESTED

**WHEREFORE**, the plaintiffs claim judgment against the defendants and each of them, jointly and severally as follows:

A. Compensatory damages in an amount warranted by the evidence at trial;

B. Punitive damages in an amount warranted by the evidence at trial;

C. Reasonable attorney fees and costs incurred in this action;

D. Such other relief as permitted by statute and as this court shall consider to be fair and equitable.

## **JURY DEMAND**

The plaintiffs hereby demand a jury on all claims and issues so triable.

Respectfully submitted,

JANE DOE and JOHN DOE individually and on
behalf of their minor child JILL DOE

By their attorney,

Elizabeth Knight Adams, BBO # 659562
The Law Offices of Elizabeth Knight Adams
81 Wethersfield Avenue, Suite 2
Hartford, CT 06114
Telephone: (860) 724-1300
Facsimile: (860) 724-1302
Electronic mail: eadams@ekadamslaw.com