UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                         )
JILL DOE,                                )
              Plaintiff,                 )
                                         )
v.                                       )        C.A. NO. 1:11-cv-11593-DPW
                                         )
ANN BRADSHAW, STEPHEN WEIXLER,           )
ALAN WINROW, JANE DAY, MASHPEE           )
SCHOOL COMMITTEE, AND                    )
THE TOWN OF MASHPEE,                     )
              Defendants.                )
_____)

## DEFENDANTS' RESPONSE TO PLAINTIFF'S *AMENDED* LOCAL RULE 56.1 CONCISE STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED[1]

      Pursuant to Local Rule 56.1, Ann Bradshaw, Alan Winrow, Jane Day, the Mashpee

School Committee and the Town of Mashpee respond to the plaintiff's Amended Concise

Statement of Material Facts as to which there is no genuine issue to be tried:

**Plaintiff's Statement:**

      1. In 2004, Steven Weixler graduated from Mashpee High School, obtaining grades of

C's and D's. Deposition of Steven Weixler ("Weixler Depo.") pp. 22-23.

---

[1] Without obtaining leave of the Court, plaintiff filed her original Rule 56.1 Statement of Material Facts ("SOF") three days late, on August 3, 2015. On August 13 and 14, 2015, the defendants' counsel contacted plaintiff's counsel to inquire about the untimeliness of plaintiff's SOF and also discussed the fact that forty (40) of the plaintiff's individual statements did not contain any corresponding citation to the record as required by Local Rule 56.1. It was only after the undersigned advised plaintiff's counsel that he intended to file a Motion to Strike those forty statements that plaintiff's counsel agreed to file a Motion to Amend Plaintiff's Rule 56 Statement of Material Facts. On August 17, 2015, plaintiff did so, without any objection from the defendants. On August 21, 2015, this Court allowed plaintiff's Motion to File an Amended Statement of Material Facts. Still, the Amended Statement of Facts routinely cites to rather lengthy documents (e.g., the Mashpee Police Report), without providing any reference to a specific page number. Accordingly, the defendants have done their best to ferret out these references where possible.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

2. In the fall of 2004 Steven Weixler attended Cape Cod Community College, obtaining grades that ranged from low Cs to failing. He dropped out in January 2006. Weixler Depo., pp. 21-23.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

3. On or about June 2005, Cheryl McIntire, a secretary at Quashnet Elementary School in Mashpee, approached Weixler, who was a recess monitor at the time, and suggested he apply for paraprofessional position at Quashnet. Weixler Depo., pp. 72, 74-76.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

4. Superintendent Ann Bradshaw hired Stephen Weixler as a paraprofessional on August 2, 2005 for the 2005-2006 academic year. His Position was renewed for the academic years 2006- 2007, 2007-2008, and 2008-2009 by Superintendent Bradshaw. Offer Ltr. From A. Bradshaw to S. Weixler, Ex. D.

**Defendants' Response:** Admitted in part; denied in part. On or about May 19, 2005, Weixler was hired as a Substitute Recess Monitor. *See* Defendants' Motion for Summary Judgment Vol. II, Exh. C. On or about June 22, 2005, Weixler was hired by Ms. Bradshaw's predecessor as a Paraprofessional in the Mashpee School Department. Vol. II, Exh. D; Deposition of Ann Bradshaw ("Bradshaw dep."), p. 67; Weixler dep., p. 62. The correspondence cited in Paragraph 4, above, "confirm[ed]" Weixler's employment. His position as a Paraprofessional was renewed by Superintendent Bradshaw for the following three academic years.

**Plaintiff's Statement:**

5. Jill's educational record in the seventh and eighth grade demonstrates that she was an average student, obtaining mostly A's, B's and C's in her classes for the 2006-2007 (seventh grade) and 2007-2008 (eighth grade) academic years. BSEA Hr'g Tr Volume VII, Nov. 29, 2011, Jane Doe ("Tr. Jane Doe"), pp. 186, 188.

**Defendants' Response:** Disputed. When asked at her deposition "were there any courses that you failed your 8th grade? If I were to suggest algebra, does that sound right," Jill Doe testified, "Probably, yeah, because I can't do algebra. I still can't." Jill Doe Dep., p. 86. The plaintiff also testified she had to take summer school in 2008 in order to pass 8th grade algebra. *Id*. Further, Jane Doe's own testimony from the BSEA Hearing is inadmissible hearsay barred by Fed. R. Evid. 802.

**Plaintiff's Statement:**

6. Jill required help in order to succeed academically. John Doe would help Jill with homework. Tr. Jane Doe, p. 187.

**Defendants' Response:** Disputed. The cited source does not support the statements contained in Paragraph 6 above, as required under Local Rule 56.1. Further, Jane Doe's BSEA Hearing testimony is inadmissible hearsay barred by Fed. R. Evid. 802.

**Plaintiff's Statement:**

7. Jill did not exhibit significant behavior issues in the seventh and eighth grade. Tr. Jane Doe, p. 190.

**Defendants' Response:** Disputed. The cited source does not support the statements contained in Paragraph 7 above, as required under Local Rule 56.1. Jane Doe was asked "Did anyone raise any concerns to you about significant behavior issues with [Jill] during that time?" She answered, "Not that I'm aware of." Tr. Jane Doe, p. 190. Further, Jane Doe's BSEA Hearing testimony is inadmissible hearsay barred by Fed. R. Evid. 802.

**Plaintiff's Statement:**

8. For all relevant periods since September 2007, the Mashpee Middle School was housed in the same building as the Mashpee High School. *See* http://www.mashpee.k12. ma.us/High.cfm.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

9. Weixler came into contact with high school students at Mashpee High School after he was transferred to work in Mashpee Middle School for the 2007-2008 academic year. Weixler Depo., pp. 60-61.

**Defendants' Response:** Admitted in part; disputed in part. The cited source does not support the statements contained in Paragraph 9 above, as required under Local Rule 56.1. The defendants admit that Weixler was transferred from the Quashnet Elementary School to the Mashpee Middle School at or near the start of the 2007-2008 academic year. Weixler dep., p. 61.

**Plaintiff's Statement:**

10. In or around September of 2007 Mashpee School Committee member Kathy Stanley received a report that Steven Weixler was providing alcohol to minors and/or students at Mashpee. Deposition of Kathy Stanley ("Stanley Depo."), pp. 71, 77, 80-83.

**Defendants' Response:** Disputed. The cited source does not support the statements contained in Paragraph 10 above, as required under Local Rule 56.1. Ms. Stanley did not testify that any such rumor involved the provision of alcohol to *students* at Mashpee. Stanley dep., pp. 80-83. Ms. Stanley testified that at one point – perhaps in the Fall, 2007 – she heard a rumor from someone (whom she could not identify), that Weixler may have been providing alcohol to minors, but that Steven Babbitt looked into the rumor and found "there wasn't any information to support the claim." Ms. Stanley believed it took place prior to the disclosure of the sexual assault on Jill Doe in March, 2009, and that it was early in her tenure, but Ms. Stanley could not otherwise recall when she heard this rumor. Stanley dep., pp. 73-75; 176-179.

**Plaintiff's Statement:**

11. Ms. Stanley failed to record in writing any information about this report, and claims no longer to remember anything about the reporter. Stanley Depo., pp. 75, 136-37.

**Defendants' Response:** Admitted in part; denied in part. The defendants dispute plaintiff's characterization of Ms. Stanley's testimony. Moreover, the cited sources do not support the statements contained in Paragraph 11 above, as required under Local Rule 56.1. Ms. Stanley testified, "I can't remember exactly where [the rumor] came from," Stanley dep., p. 75, and repeatedly testified she did not remember the source of the rumor. *Id.* at 75, 136. Regarding recording information about the rumor, in response to the question, "Did you write down at that time who you heard it from," Ms. Stanley testified "I did not." *Id.* at 136.

**Plaintiff's Statement:**

12. Ms. Stanley does not know how this individual came to know that Weixler was providing alcohol to students, the names and/or ages of the students to whom Weixler was providing alcohol or any other information. Stanley Depo., p. 80.

**Defendants' Response:** Admitted in part; denied in part. The defendants dispute plaintiff's characterization of Ms. Stanley's testimony. Moreover, the cited sources do not support the statements contained in Paragraph 12 above, as required under Local Rule 56.1. The defendants admit Ms. Stanley testified she did not know anything about the specific minors for whom Weixler may have been buying alcohol. *Id*. at p. 80.

**Plaintiff's Statement:**

13. Ms. Stanley testified that she informed the School Committee Chair Mary Rose Grady that she received a report that Weixler was providing alcohol to minors/students. Stanley Depo., p. 80.

**Defendants' Response:** Denied. The cited sources do not support the statements contained in Paragraph 13 above, as required under Local Rule 56.1. Ms. Stanley testified, "I think it was brought up. I think I talked to -- I'm not even sure -- I don't remember. I think I talked to I think the chair at the time." Stanley Dep., p. 74. She testified "I don't recall the actual conversation." *Id.*, p. 75. Further, Ms. Stanley's was not asked any questions about Weixler's provision of alcohol to students, only "minors." Stanley Dep., p. 80.

**Plaintiff's Statement:**

14. Ms. Stanley testified that, upon information and belief, Chairman Grady thereafter informed Bradshaw of the report. Stanley Depo., p. 79.

**Defendants' Response:** Admitted in part; denied in part. The defendants admit that Ms. Stanley gave such equivocal testimony; however, Maryrose Grady has no memory of this exchange and denied ever having a conversation about Stephen Weixler providing alcohol to minors. Grady dep., pp. 48-49, 87-88.

**Plaintiff's Statement:**

15. Stanley did not follow up to ensure there was an investigation. She did not notify the Mashpee Police Department or Department of Children and Families. Stanley testified, "I guess I thought it would be handled with the school." Stanley Depo., p. 76-77, 80.

**Defendants' Response:** Admitted in part; denied in part. Regarding this issue, Ms. Stanley later testified, "I believe what I recall is the investigation was done and there wasn't any information to support the claim." Stanley dep., p. 179. The defendants admit Ms. Stanley did not report this rumor to the Mashpee Police Department or the Department of Children & Families ("DCF").

**Plaintiff's Statement:**

16. Ms. Stanley testified Superintendent Bradshaw reported to the School Committee in Executive Session regarding Stephen Babbitt's investigation into Weixler related to providing alcohol. Stanley Depo., p. 82.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

17. The defendants did not disclose to the plaintiff that any investigation occurred. *See* Complainant's Int. & RFP at BSEA, Int. No. 1 (no reference to investigation related to alcohol in 2008); *see also* Grady Depo., 47-50; Bradshaw Depo., p 5 (noting only that "a rumor was communicated to me that Mr. Weixler was dating a high school student" in 2008); Babbitt Depo. (stating "I wasn't asked to perform an investigation"); St. Cyr. Depo., p. 234 (testifying that she had never received a report that Weixler was buying alcohol for students).

**Defendants' Response:** Denied. Ms. Stanley's vague and contradictory testimony about this incident, which she did not recall literally until her deposition (January, 2015) – namely, that

such an investigation involving alcohol took place in 2008 – is not supported by any documentary evidence. It is contradicted by all other witnesses who offered *any* testimony related to the topic of Weixler's providing alcohol to students, including School Committee member Maryrose Grady, Superintendent Ann Bradshaw, Middle School Principal Stephen Babbitt, Principal Lou Ann St. Cyr, and Weixler himself. Grady dep., pp. 48-49, 87-88; Bradshaw dep., p 5; Babbitt dep., p 95; St. Cyr. Dep., p. 234; Weixler dep., p. 84.

**Plaintiff's Statement:**

18. In the early fall of 2007 Steven Weixler, in his role as a paraprofessional, provided assistance to a student who, as part of their schedule, attended an art class. Student 1 a Mashpee High School Senior attended the same art class as an intern. (Weixler Depo., p. 98-100); Deposition of Student 1 ("Student 1 Depo") p.36.

**Defendants' Response:** Admitted

**Plaintiff's Statement:**

19. Weixler and Student 1 developed a personal relationship and Weixler visited Student 1 at her house socially on two occasions and they kissed "two or three" times while he was at her home. Student 1 Depo, p.35-43; Weixler Depo., p. 101.

**Defendants' Response:** The cited sources do not support the statements contained in Paragraph 19 above, as required under Local Rule 56.1. Notwithstanding this objection, the defendants admit the substance of this Statement, but note that Weixler was friends with Student 1's older brother and Student 1's testimony does not specify how they developed a "personal relationship."

**Plaintiff's Statement:**

20. Weixler testified that the teacher in the art class observed his interaction with Student 1 in the classroom and he was informed that she grew concerned. He testified that she notified administration, who then called Weixler into a meeting with two individuals who he believes were Susan Van Toll, Teachers' Union Representative, and possibly Principal St. Cyr. ("Art Class Report"). Weixler Depo., pp. 116-17.

**Defendants' Response:** Denied.  The cited sources do not support the statements contained in Paragraph 20 above, as required under Local Rule 56.1.  Regarding his memory of such a meeting, Stephen Weixler testified, "I really do not recall who it was."  Weixler dep., p. 97.  He continued, "If it was not Mr. Winrow, then it would have to be Ms. St. Cyr, but I do not remember who exactly it was.  There was two people.  It quite possibly, if I remember correctly, was the school -- I don't know the word I'm looking for -- union rep quite possibly.  I do not remember if she was there."  Weixler dep., p. 119.  Further, Weixler was asked, "According to the two people in the office, the art teacher had concerns about the way you were interacting with [Student 1]?"  Weixler responded, "Just the overall cohesiveness […] Not just specifically the way I acted."  Weixler dep., p. 115.  (The defendants note Alan Winrow did not begin his employment with the Mashpee School Department until July 1, 2008.).  Quite simply, the "Art Class Report" did not exist.  *See* previously-filed Affidavits of MHS Art Teachers Theresa Pacheco and Kristen Deschamps and principal Lou Ann St. Cyr (Document Nos. 99-101).

**Plaintiff's Statement:**

21. None of the defendants, in either their interrogatories or deposition testimony, disclosed any information about the Art Class Report to the plaintiff. The defendants further provided no records related to this meeting, and there are no records in Weixler's employment

file.  See August 8, 2011 Interrogatory Response by Mashpee Public Schools, Ex. A; Mashpee's

Answers to Interrogatories and Production Requests ("IPR"), Ex. G.

**Defendants' Response:** The defendants admit that they did not previously provide the plaintiff

information about the "Art Class Report" because the "Art Class Report" does not exist.  *See*

previously-filed Affidavits of MHS Art Teachers Theresa Pacheco and Kristen Deschamps and

principal Lou Ann St. Cyr (Document Nos. 99-101); *see also* Response to ¶ 20, above.

**Plaintiff's Statement:**

22. Weixler did not receive any discipline, coaching or increased supervision following

this meeting. Weixler Depo.*,* pp. 119-20.

**Defendants' Response:**  Admitted; however, the Administrators contend no such meeting took

place.

**Plaintiff's Statement:**

23. In January of 2008 Lou Ann St. Cyr submitted a letter indicating she would retire at

the end of the 2008 school year. Mashpee School Committee Finance Meeting January 16, 2008,

Minutes p. 4.

**Defendants' Response:**  Admitted.

**Plaintiff's Statement:**

24. Committee Chair Mary Rose Grady, testified that she received a separate report from

a student that Weixler was engaged in inappropriate relationships with a student (the "Grady

Report"). Specifically, Student 7, then a junior at Mashpee High School, saw Ms. Grady at a

public location and asked her, "How come it's okay for a teacher to date a student?" When Ms.

Grady asked "What are you talking about?" Student 7 said that "Stephen Weixler was seeing a

student." Ms. Grady asked "How do you know that?" She replied, "Everybody knows it." Grady Depo., pp. 49-50.

**Defendants' Response:** Admitted in part; disputed in part. The defendants dispute plaintiff's characterization of Ms. Grady's testimony as a "separate report" given the lack of any evidence concerning a prior "report." *See* Affidavits of MHS Art Teachers Theresa Pacheco and Kristen Deschamps and principal St. Cyr (Document Nos. 99-101). Ms. Grady also testified she told the student, "'Well, I'll talk to Ann Bradshaw about it and have her look into it.'" Grady dep., p. 50. In addition, this "report" was conveyed to Ms. Grady in the middle of a chance meeting with Student 7 at the Mashpee Commons. Otherwise, admitted.

**Plaintiff's Statement:**

25. Chairwoman Grady did not attempt to elicit additional information from Student 7, "because I was taking it as a rumor and kids talk all the time." Grady Depo., p. 51-52.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

26. Ms. Grady told Superintendent Bradshaw of this report in her capacity as Committee Chair when the two next met. Grady Depo., pp. 52-53.

**Defendants' Response:** Admit that Ms. Grady conveyed her conversation with Student 7 to Superintendent Bradshaw in her capacity as the Committee Chair.

**Plaintiff's Statement:**

27. Ms. Grady informed Bradshaw that she had received this report, but did not provide Student 7's name to Bradshaw at that time because, "she didn't ask." Grady Depo., p. 55.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

28. When asked: "Did it occur to you that given Stephen Weixler's age and the age of many students within the school that if this were true, this behavior could constitute child abuse or criminal conduct," Grady testified: "You always know that as a mandated reporter." Grady Depo., p. 52.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

29. Ms. Grady testified that Bradshaw reported to the Committee in an executive session that "there had been a rumor and that it had been investigated and that it was found to be false. . . [and] her administrators had talked with Stephen Weixler and with the girl in question, and that they had both denied anything going on." Grady Depo., p. 58. There are no notes regarding this meeting.

**Defendants' Response:** Admitted in part; disputed in part. The statement contained in Paragraph 29 regarding a lack of notes of this meeting fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Moreover, said statement does not set forth "material facts," but the non-production of materials in discovery. Further, Ms. Grady was asked, "And was this meeting in executive session, this discussion that you had with Ann Bradsaw?" Ms. Grady replied, "I would imagine so. I can't remember exactly, but I would imagine we wouldn't have been talking about it in public." Grady dep., p. 58.

**Plaintiff's Statement:**

30. In February, 2008, Defendant Bradshaw received another report by a now-forgotten individual that Weixler was dating a student or students (the "First Bradshaw Report").

Bradshaw testified that "a rumor was communicated to me that Mr. Weixler was dating a high school student." Bradshaw Depo., p. 5.

**Defendants' Response:** Disputed. The defendants dispute plaintiff's characterization of Ann Bradshaw's receipt of this information as the "First Bradshaw Report" and that this was "another report." Ms. Grady's testimony demonstrates that the so-called "Grady Report" and "First Bradshaw Report" are one and the same. Maryrose Grady testified she passed on the information she received from Student 7 in the winter of 2008 to Ann Bradshaw – specifically, that she had heard a rumor that Weixler was dating a student. Grady dep., pp. 49, 52-53, 55-56.

**Plaintiff's Statement:**

31. Bradshaw failed to write down the name of the individual who reported this information to her, and no longer knows the names, age, position, or whether the persons was a male or a female. She remembers only that the individual was a community member, "it might have been a parent." Bradshaw Depo., pp. 6-15.

**Defendants' Response:** Disputed. The defendants dispute plaintiff's characterization of Ann Bradshaw's testimony regarding "the persons." Further, Ms. Bradshaw testified that she spoke to the principal, Lou Ann St. Cyr, about it and asked her to investigate "either that day or the next day." Bradshaw dep., pp. 15-16.

**Plaintiff's Statement:**

32. In February of 2008 Ann Bradshaw, in her position as Superintendent, had in her care 1,923 students, of those students 915 of the students were enrolled at Mashpee High School. A significant percentage those students were under the age of sixteen a greater percentage of students were under the age of eighteen. Mashpee School Committee Regular Meeting 2/6/08.

**Defendants' Response:** Disputed. The cited sources do not support the statements contained in Paragraph 32 above, as required under Local Rule 56.1. The defendants dispute plaintiff's characterization of testimony regarding a rumor that Weixler was dating a student as a formal "report." Further, there was no rumor that Weixler was dating multiple students, as Paragraph 32 suggests. Bradshaw dep., p. 13.

**Plaintiff's Statement:**

33. Bradshaw did not ask for the names of the student(s) who Weixler was reported to be dating. Bradshaw Depo., p. 13.

**Defendants' Response:** Disputed. The cited sources do not support the statement contained in Paragraph 33 above, as required under Local Rule 56.1. Ms. Bradshaw testified she did not recall if she asked. Bradshaw Depo., p. 13.

**Plaintiff's Statement:**

34. Bradshaw did not report the allegation to the Department of Children and Families or the police. Bradshaw Depo., pp. 193-94.

**Defendants' Response:** Admitted in part; disputed in part. There was not an "allegation" that Weixler was dating a student, but an unsubstantiated rumor that was investigated and found to be without merit. Bradshaw dep., pp. 15-16, 22-23, 141, 150; St. Cyr dep., pp. 31-32, 34, 35-36, 38, 49, 51-52; Babbitt dep., pp. 84-86. The defendants admit that Bradshaw did not report this rumor to the Mashpee Police Department or DCF.

**Plaintiff's Statement:**

35. In connection with the First Bradshaw Report, Superintendent Bradshaw asked Principal St. Cyr to conduct an investigation. Bradshaw Depo., p. 16, 17.

**Defendants' Response:**  Admitted in part; disputed in part.  The defendants dispute plaintiff's characterization of the response to this rumor as the "First Bradshaw Report."  There were not multiple "Reports."  *See* Response to ¶ 30.

**Plaintiff's Statement:**

36. Bradshaw did not inform St. Cyr about any details related to the Report, and St. Cyr did not ask for any details. *Id*.; St. Cyr Depo., 34-35.

**Defendants' Response:**  Admitted in part; disputed in part.  The cited sources do not support the statements contained in Paragraph 36 above, as required under Local Rule 56.1.  The defendants dispute plaintiff's characterization of Ms. St. Cyr's and Ms. Bradshaw's testimony and plaintiff's characterization of this information as a "Report."  Ms. Bradshaw testified, "I believe that the person said to me, 'it's just a rumor,' and when I asked, 'Where did the information come from,' it was a shrug."  Bradshaw dep., pp. 17-18.  Moreover, while both Ms. St. Cyr and Ms. Bradshaw testified Ms. Bradshaw did not inform Ms. St. Cyr of the *name* of the student who was the source of this rumor, neither testified that Ms. Bradshaw did not provide "any details." Bradshaw dep., p. 16-17; St. Cyr dep., pp. 34-35.

**Plaintiff's Statement:**

37. St. Cyr testified that she delegated the investigation to Babbitt. St. Cyr Depo., p. 35.

**Defendants' Response:**  Admitted.

**Plaintiff's Statement:**

38. Babbitt testified that he learned about the Report from Principal St. Cyr and testified that "Lou Ann St. Cyr told me it was mentioned at a School Committee meeting." Babbitt Depo. 82, 111.

**Defendants' Response:** Admitted in part; disputed in part. The cited sources do not support the statements contained in Paragraph 38 above, as required under Local Rule 56.1. The defendants dispute plaintiff's characterization of this information as a "Report." See Response to Paragraph 36, above. Otherwise, admitted.

**Plaintiff's Statement:**

39. Babbitt testified that he, "wasn't asked to perform an investigation." Babbitt Depo., p. 163. Rather, he was asked "to have a conversation with Mr. Weixler regarding a comment made at a school committee meeting." *Id.*, p. 148. He testified that this conversation was approximately ten or fifteen minutes in length. *Id.,* p. 82.

**Defendants' Response:** Admitted in part; disputed in part. While the cited sources do not support the statements contained in Paragraph 39 above, as required under Local Rule 56.1, the defendants admit Mr. Babbitt gave this testimony.

**Plaintiff's Statement:**

40. Weixler testified he did not remember any such discussion with Stephen Babbitt. Weixler Depo., pp. 86-88.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

41. Babbitt stated in a February 8, 2008 email to Principal St. Cyr, as follows: "I spoke with Stephen Weixler yesterday at the end of the school day re the comments made to the school committee/superintendent. His response was it was 'non sense [sic] and ridiculous.' Please let me know if you would like further action taken." February 8, 2008 Email, Ex. F.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

42. An August 8, 2011 Interrogatory Response by Mashpee Public Schools notes that Babbitt concluded that, "'[t]here was nothing there. His body language, tone of voice told me he is telling the truth.' There is no documentation of this investigation." Ex. A.

**Defendants' Response:** Admitted in part; disputed in part. Paragraph 42 omits the preceding information, "There was a vague rumor that Weixler was dating a student. His supervisor investigated and reported with confidence . . . ." Otherwise, admitted.

**Plaintiff's Statement:**

43. Bradshaw testified that in February, 2008 she was also informed by a separate and now-forgotten individual that Weixler was dating Student 1 (The "Second Bradshaw Report"). Bradshaw Depo., 23.

**Defendants' Response:** Disputed. The cited source does not support the statements contained in Paragraph 43 above, as required under Local Rule 56.1. The defendants dispute plaintiff's characterization of Ms. Bradshaw's testimony and her characterization of this information as the "Second Bradshaw Report." No testimony supports this as having been independent of the first rumor. Ms. Bradshaw testified that "the name [Student 1] came right at the same time of the rumor or within a very small time period" of the ongoing investigation by Lou Ann St. Cyr and Stephen Babbitt. Bradshaw Dep., p. 23-24. Mr. Bradshaw testified she did not recall how that information came to her attention. *Id.* at 23. Ms. St. Cyr testified she later informed Ms. Bradshaw of the name of Student 1. St. Cyr dep., p. 65.

**Plaintiff's Statement:**

44. Student 7 testified that in approximately April or May of 2008, she was called in by Principal St. Cyr and asked whether Stephen Weixler was dating a student (the "St. Cyr

Report"). Student 7 informed her that "he had a relationship with Student 1." Student 7 Depo., p.16-18.

**Defendants' Response:** Disputed. The cited source does not support the statements contained in Paragraph 44 above, as required under Local Rule 56.1. Student 7 was asked, "Do you recall when that discussion happened with Ms. St. Cyr," and she replied, "I honestly couldn't tell you at what point during my junior year that it occurred. It's too – I couldn't recall the exact time of year." Student 7 Dep., pp. 16-17. Paragraph 44 also omits that Student 7 testified, ". . . I had heard that he had a relationship with [Student 1], who was 18 at the time and a senior." *Id*. at p. 16.

**Plaintiff's Statement:**

45. Principal St. Cyr testified that at some point in the 2007-2008 academic-year, she asked Student 1 and her parent(s) whether Weixler had engaged in any inappropriate behavior with her. St. Cyr Depo., p. 58.

**Defendants' Response:** Admitted. In addition to the above, Ms. St. Cyr testified she had Student 1 in her office and, the same day, called Student 1's parents and told them she had been given information that Student 1 was dating Stephen Weixler. St. Cyr dep., p. 58. Ms. St. Cyr further testified, "They told me that she was not dating Stephen and they did not seem to be concerned." *Id*. at p. 59.

**Plaintiff's Statement:**

46. Student 1 testified that such a conversation with her and/or her parents "never happened." Student 1 dep., p. 25.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

47. Chairwoman Grady testified that Superintendent Bradshaw reported to the Committee in an executive session that "there has been rumor it had been investigated and it was found to be false… Her administrators had talked with Stephen Weixler and with the girl in question and they both denied anything going on." Grady Depo., 58.

**Defendants' Response:** Admitted in part; disputed in part. This Paragraph is largely duplicative of Paragraph 29, above. Ms. Grady was asked, "And was this meeting in executive session, this discussion that you had with Ann Bradsaw?" Ms. Grady replied, "I would imagine so. I can't remember exactly, but I would imagine we wouldn't have been talking about it in public." Grady dep., p. 58. Otherwise, admitted.

**Plaintiff's Statement:**

48. When asked whether he was providing alcohol to students during the 2007-2008 academic year, Weixler invoked his Fifth Amendment against self-incrimination. Weixler Depo., p. 84.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

49. When asked whether he was having a sexual relationship with any student under the age of fifteen (15) during the 2007-2008 academic year, Weixler invoked his Fifth Amendment right against self-incrimination. Weixler Depo., p. 121.

**Defendants' Response:** Disputed. The cited source does not support the statements contained in Paragraph 49 above, as required under Local Rule 56.1. Weixler was not asked this question, but was asked whether he had a sexual relationship with Student 3. Weixler dep., p. 121.

**Plaintiff's Statement:**

50. Principal St. Cyr retired in June, 2008. Mashpee Public Schools hired Alan Winrow as the Principal for Mashpee High School for the 2008-2009 Academic Year. Stephen Babbitt remained as the Middle School Principal. Bradshaw, Grady, Stanley, Babbitt, and St. Cyr did not inform Winrow of the history of allegations of misconduct involving Stephen Weixler until January 2009. Deposition of Alan Winrow ("Winrow Depo."), pp. 32-33.

**Defendants' Response:** Admitted in part; disputed in part. The defendants dispute plaintiff's characterization of an unsubstantiated rumor that Weixler was dating a student as a "history of allegations of misconduct." There was not an "allegation" that Weixler was dating a student, but an unsubstantiated rumor that was investigated and found to be without merit. Bradshaw dep., pp. 15-16, 22-23, 141, 150; St. Cyr dep., pp. 31-32, 34, 35-36, 38, 49, 51-52; Babbitt dep., pp. 84-86. Otherwise, admitted.

**Plaintiff's Statement:**

51. The position of Junior Varsity Soccer Coach was posted on June 11, 2008. Varsity Soccer Coach Patricia Morano, who was Weixler's gym teacher while he was a student at Mashpee Public Schools, sought him out to ask him to apply for the position of junior varsity soccer coach. Weixler Depo., pp. 124-25.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

52. Weixler interviewed for the position, and Morano and Athletic Director Michael Horne recommended Weixler for the position. Deposition of Michael Horne ("Horne Depo."), p. 88; Deposition of Patricia Morano ("Morano Depo."), p. 73.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

53. Ann Bradshaw delegated the task of hiring for the position of JV soccer coach to the athletic director. Bradshaw Depo., 365-68. Deposition of Michael Horne ("Horne Depo."), p. 88.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

54. At no time did Bradshaw notify Horne of any of the information known to multiple administrators regarding the prior reports. Horne depo., pp. 88-90.

**Defendants' Response:** Admitted in part; denied in part. The defendants dispute plaintiff's characterization of the unsubstantiated rumor that Weixler was dating a student as "the prior reports." There were not "prior reports," but an unsubstantiated rumor Weixler was dating a student, which was investigated and found to be without merit. Bradshaw dep., pp. 15-16, 22-23, 141, 150; St. Cyr dep., pp. 31-32, 34, 35-36, 38, 49, 51-52; Babbitt dep., pp. 84-86. Otherwise, admitted.

**Plaintiff's Statement:**

55. Michael Horne and Pat Morano each testified that they would not have hired Stephen Weixler had they know [sic] of the prior reports. *Id*, pp. 90-95; Deposition of Patricia Morano ("Morano Depo."), p. 73.

**Defendants' Response:** Disputed. The cited sources do not support the statements contained in Paragraph 55 above, as required under Local Rule 56.1. Patricia Morano testified that, had she known that Weixler "had been investigated in February of 2008 for improperly dating a student," she would not have recommended him. Morano dep., p. 73. When plaintiff's counsel asked Mr. Horne what he would have done if he had known that there was an "investigation" that Stephen Weixler was alleged to have been dating Student 1 in or around February, 2008, Mr. Horne

stated ". . . this is hindsight, what I might have done six years ago, seven years ago. I would have reposted the position and see what other candidates were out there." Horne dep., pp. 93-94. Notably, neither Ms. Morano nor Athletic Director Horne were asked what they might have done if they had been advised of the *results* of the February, 2008 investigation. *Id*.

**Plaintiff's Statement:**

56. On July 19, 2008, Jill's sixteen (16) year old cousin died tragically after being hit by a car while a pedestrian. Tr. Jane Doe at 203-205.

**Defendants' Response:** The cited source does not support the statements contained in Paragraph 56 above, as required under Local Rule 56.1. Otherwise, admitted.

**Plaintiff's Statement:**

57. Due to anxiety and depression, from losing her cousin, Jill was unable to attend MCAS preparation summer program. Tr. Jane Doe, p. 191.

**Defendants' Response:** Jane Doe's BSEA Hearing testimony is inadmissible hearsay barred by Fed. R. Evid. 802. Otherwise: Admitted.

**Plaintiff's Statement:**

58. During the 2008-2009 school year, Jill was a member of the Girls' Junior Varsity and Varsity Soccer Teams. Jill did not have any relationship with Weixler except that he was her soccer coach. Tr. Jane Doe, p. 245.

**Defendants' Response:** Admitted in part; disputed in part. The defendants admit Jill's status as a member of the Girls' Soccer Teams as referenced, but dispute the second sentence of Paragraph 58. Weixler testified he first met Jill as a coach. Weixler dep., p. 195. However, the extensive text message communications between Jill and Weixler, conducted on private cell phones, in secret and off school grounds, at night, or otherwise outside of school hours, suggests

their "relationship" extended beyond that of coach and team member. Jill Doe dep., p. 136; Weixler dep., p. 235; Third Amended Complaint, ¶19.

**Plaintiff's Statement:**

59. At the beginning of Jill's freshman year, Jane Doe informed Pat Farrell, Jill's Guidance Counselor, of Jill's cousin's death. Tr. Doe, p. 203-05.

**Defendants' Response:** Admitted. The defendants note, however, that this statement contains inadmissible hearsay in the form of Jane Doe's BSEA Hearing testimony.

**Plaintiff's Statement:**

60. Mrs. Doe also shared concerns about the educational impact of the loss on both Jill and her sister. Mrs. Doe sought guidance on how to prevent the loss from affecting her daughters' educational performance. Tr. Doe, p. 203.

**Defendants' Response:** Disputed as stated. In actuality, Jane Doe gave the following testimony at the BSEA Hearing: "I just wanted to make them aware that -- of the significance of the loss that [Jill] had. And I was at that time working on trying to get her some *outside counseling* for grief counseling." Tr. Doe, pp. 204-205.

**Plaintiff's Statement:**

61. Early in the school year, Farrell notified Jill's teachers of Jill's cousin's death and the impact on Jill and her ability to access her education. Farrell did not share the information provided by Mrs. Doe with the Child Study Team ("CST") until late October or early November, 2008, nearly two months after Mrs. Doe first expressed her concerns. Mashpee's Answers to Interrogatories and Production Requests ("IPR"), p. 9, No. 11, Ex. C.

**Defendants' Response:** Disputed. The defendants dispute plaintiff's characterization of Mrs. Doe "express[ing] her concerns" regarding Jill's cousin's death. See Response to SOF ¶ 60,

above. The defendants also dispute plaintiff's characterization of the statements in the cited source, IPR p. 9, No. 11, which also indicates Ms. Farrell "recalls bringing up [Jill's] name in the fall of 2008 . . ." with Jill's name appearing *by* late October or November. The cited source does not indicate Ms. Farrell did not share the information *until* then.

**Plaintiff's Statement:**

62. The school had established the CST as a "weekly communication and triage to discuss students who were struggling academically, emotionally or behaviorally. The CST also discussed accommodations." IPR, p. 9, No. 11, Ex. C.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

63. During the 2008-2009 academic year, the CST was chaired by Jane Day, then Assistant Principal. Members included: Peter Shea, School Psychologist; John Dolen and Rewa Melby, School Adjustment Counselors; Lindsay Kett, Guidance Director; Dan Patenaude and Patricia Farrell, Guidance Counselors; Judy DuPont, School Nurse; and Elizabeth Babich, Special Education Evaluator. IPR, p 3, No. 4, Ex. C.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

64. The CST was the primary gateway to special education services for students who required an evaluation to determine eligibility. BSEA Hr'g Tr. Volume IV, Oct. 25, 2011, John Dolen ("Tr. Dolen"), p. 70.

**Defendants' Response:** Admitted in part; denied in part. The cited source does not support the statements contained in Paragraph 64 above, as required under Local Rule 56.1. The defendants admit that CST members were the persons primarily responsible for identifying students in the

General Education population who may require a pre-referral for Special Education testing and services. Kett dep., pp. 23-24, 33.

**Plaintiff's Statement:**

65. Day, Farrell, and Dolen attended the majority of the CST meetings. When asked how many CST meetings he attended, Shea declined to provide an answer. BSEA Hr'g Tr. Volume VI, Nov. 28, 2011, Peter Shea ("Tr. Shea"), p. 188. Interrogatory responses indicate, however, that "most of the members attend every meeting. From time to time one or another may have missed a meeting due to an emergency or illness." IPR, p. 9, No. 11, Ex. C.

**Defendants' Response:** The cited source, page 188 of Peter Shea's BSEA hearing testimony, does not support the statements contained in Paragraph 65 above, as required under Local Rule 56.1. Otherwise, admitted.

**Plaintiff's Statement:**

66. With respect to the identification of students who have disabilities pursuant to the IDEA and Section 504, Shea had the most experience and training, with Dolen second to him. Tr. Shea, p. 138. Dolen and Shea are the only two members of the CST who also regularly attended Staff Meetings for the Special Education Team. Those meetings occurred at least monthly, if not twice a month. *Id*. at 162.

**Defendants' Response:** Admitted in part; disputed in part. Peter Shea testified in the BSEA Hearing that staff meetings for the special education department occurred "either monthly or . . . quarterly. Something like that. I would have to check." Tr. Shea, p. 162. Otherwise, admitted.

**Plaintiff's Statement:**

67. Steven Weixler's position was announced and approved at the October 1, 2008 School Committee Meeting. It was announced during the Personnel Report by Superintendent

Bradshaw. Weixler was approved without comment, question or conditions. Committee Meeting minutes 10/1/2008, Ex. H.

**Defendants' Response:**  Admitted in part; denied in part.  At this meeting, Ann Bradshaw read a list of all new staff for the Fall, 2008, including Stephen Weixler (Girls Jr. Varsity Soccer).  Mr. Weixler was 1/21 individuals mentioned for the Fall, 2008 coaching positions alone.  Grady dep., p. 120-121.  In addition, these coaching positions were not "approved" by the Mashpee School Committee, whose jurisdiction with respect to hiring decisions is confined, by statute, to four specific positions.  *See* Mass. General Laws, ch. 71, § 37 (superintendent), § 41 (business administrator), § 53 (registered nurse or school physician); ch. 71B, § 3A (special education administrator).

**Plaintiff's Statement:**

68. In or about October, 2008, Weixler drove Jill home from soccer practice. On that drive home, he learned where she lived. During the ride, he rubbed Jill's leg with his hand. He let her know he would pick her up sometime, and Jill said no. He continued efforts to develop a relationship with her through texts and interactions at soccer practice. Jill Doe SAIN Interview, Ex. B.

**Defendants' Response:**  Admit that Jill provided these statements during the SAIN interview; Weixler denied that he rubbed Jill's leg during this ride home.  Weixler dep., p. 145.

**Plaintiff's Statement:**

69. Throughout the season, Weixler was engaged in significant inappropriate behaviors with Mashpee students, mostly girls on the soccer team. *See* Police Report, Ex. I.

**Defendants' Response:**   Admitted in part; disputed in part.   The statement contained in Paragraph 69 fails to comply with Local Rule 56.1 in that it is not supported with page references

to affidavits, depositions, and other documentation. Therefore, it should be disregarded. The defendants dispute this Statement as it cites inadmissible hearsay in the form of the Mashpee Police Department Police Report relative to Weixler's arrest. The defendants otherwise admit that in March, 2009, the Mashpee Police Department's investigation revealed that Weixler had engaged in significant inappropriate behaviors with female students both on-and-off the soccer team.

**Plaintiff's Statement:**

70. Weixler informed team members that if they were drunk, they should call him for a ride. Police Report, Ex. I (Student 11 Interview).

**Defendants' Response:** Admitted in part; disputed in part. The statement contained in Paragraph 70 fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Therefore, it should be disregarded. The defendants dispute this Statement as it cites inadmissible hearsay in the form of the Mashpee Police Department Police Report relative to Weixler's arrest. The defendants otherwise admit the contents of the Report.

**Plaintiff's Statement:**

71. Weixler told Student 12 she was beautiful, and "wanted [her] to drop off her uniform at his house." Police Report, Ex. I (Student 12 Interview).

**Defendants' Response:** Admitted in part; disputed in part. The statement contained in Paragraph 71 fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Therefore, it should be disregarded. The defendants dispute this Statement as it cites inadmissible hearsay in the form of the Mashpee

Police Department Police Report relative to Weixler's arrest. The defendants otherwise admit the contents of the Report.

**Plaintiff's Statement:**

72. Weixler obtained team members' phone numbers and texted inappropriate and/or sexually explicit texts to them. Police Report, Ex. I (Student 5; Student 4; Student 12; Student 13; Student 3, Student 6.).

**Defendants' Response:** Admitted in part; disputed in part. The statement contained in Paragraph 72 fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Therefore, it should be disregarded. The defendants dispute this Statement as it cites inadmissible hearsay in the form of the Mashpee Police Department Police Report relative to Weixler's arrest. The defendants otherwise admit the contents of the Report.

**Plaintiff's Statement:**

73. Weixler texted girls at school during school hours. Deposition of Student 4 ("Student 4 Depo."), pp. 114-115 (testifying that on a day of heavy texting, which happened "regularly," "[i]t was pretty frequent. I mean, each class was an hour and 45 minutes, and I probably got 30 texts in each class, roughly").

**Defendants' Response:** Admit that Weixler texted Student 4 and Student 5 during school hours; however, no other "girls" provided such testimony.

**Plaintiff's Statement:**

74. Weixler texted Student 4 that she was "amazing and sexy." Police Report, Ex. I.

**Defendants' Response:** Admitted in part; disputed in part. The statement contained in Paragraph 74 fails to comply with Local Rule 56.1 in that it is not supported with page references

to affidavits, depositions, and other documentation. Therefore, it should be disregarded. The defendants dispute this Statement as it cites inadmissible hearsay in the form of the Mashpee Police Department Police Report relative to Weixler's arrest. The defendants otherwise admit the contents of the Report.

**Plaintiff's Statement:**

75. Weixler texted girls when he was drunk and talked "dirty." Police Report, Ex. I.

**Defendants' Response:** Admitted in part; disputed in part. The statement contained in Paragraph 75 fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Therefore, it should be disregarded. The defendants dispute this Statement as it cites inadmissible hearsay in the form of the Mashpee Police Department Police Report relative to Weixler's arrest. The defendants otherwise admit the contents of the Report.

**Plaintiff's Statement:**

76. He texted girls during school, sometimes for hours. Student 4 Depo., pp 114-15. *See also* Police Report, Ex. I.

**Defendants' Response:** Admitted in part; disputed in part. This statement is largely duplicative of Paragraph 73, above. The statement contained in Paragraph 76 fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Therefore, it should be disregarded. The defendants dispute this Statement as it cites inadmissible hearsay in the form of the Mashpee Police Department Police Report relative to Weixler's arrest. The defendants otherwise admit the contents of the Report.

**Plaintiff's Statement:**

77. Weixler offered to drive a student to an All-Star game alone Police Report, Ex. I (Student 14 Interview - declined).

**Defendants' Response:** Admitted in part; disputed in part. The statement contained in Paragraph 77 fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Therefore, it should be disregarded. The defendants dispute this Statement as it cites inadmissible hearsay in the form of the Mashpee Police Department Police Report relative to Weixler's arrest. The defendants otherwise admit the contents of the Report.

**Plaintiff's Statement:**

78. Weixler told Student 13 that she was 'pretty' and they should go out on a date. Police Report, Ex. I.

**Defendants' Response:** Admitted in part; disputed in part. The statement contained in Paragraph 78 fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Therefore, it should be disregarded. The defendants dispute this Statement as it cites inadmissible hearsay in the form of the Mashpee Police Department Police Report relative to Weixler's arrest. The defendants otherwise admit the contents of the Report.

**Plaintiff's Statement:**

79. Weixler brought Student 4 to a soccer game he played in. Student 4., p. 117 ("[H]e convinced me to go, and, yeah, he showed up to my house and picked me up, drove out. We talked the whole time. I watched him play and then we drove straight home, and he dropped me off.").

**Defendants' Response:** Admitted in part; disputed in part. The defendants dispute this Statement to the extent it misquotes Student 4's testimony. Further, Student 4 testified this took place "definitely after school," and "the plans weren't discussed in school." Depo. of Student 4., p. 117.

**Plaintiff's Statement:**

80. Weixler told Student 4 that "having sex with someone in regards to age is only a number and age doesn't matter." Police Report, Ex. I.

**Defendants' Response:** Admitted in part; disputed in part. The statement contained in Paragraph 80 fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Therefore, it should be disregarded. The defendants dispute this Statement as it cites inadmissible hearsay in the form of the Mashpee Police Department Police Report relative to Weixler's arrest. The defendants otherwise admit the contents of the Report.

**Plaintiff's Statement:**

81. Weixler drove Student 5 alone to a local ball field and tried to kiss her. Deposition of Student 5 ("Student 5 Depo."), p. 49. He told her that he loved her, that she was beautiful and that he had never met anyone like her before. *Id.,* p. 53.

**Defendants' Response:** Disputed. The cited sources do not support the statements contained in Paragraph 81 above, as required under Local Rule 56.1. Student 5 testified she drove herself to this field, in order to meet Weixler and buy alcohol from him. Student 5 dep., p. 51. Further, this was a field "on the opposite side of town" from Mashpee High School. *Id.* at 50. The encounter was at night. *Id.* Student 5 had only told one friend, who was supposed to come with her, about the meeting. *Id.*

**Plaintiff's Statement:**

82. Weixler provided alcohol to students. Police Report, Ex. I ("[I]t was common knowledge that Weixler would buy alcohol for students.").

**Defendants' Response:** Disputed in part; admitted in part. The statement contained in Paragraph 82 fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Therefore, it should be disregarded. The defendants dispute this Statement as it cites inadmissible hearsay in the form of the Mashpee Police Department Police Report relative to Weixler's arrest. The defendants deny that they possessed such "common knowledge," but otherwise admit the contents of the Report.

**Plaintiff's Statement:**

83. Weixler then tried to "hang out" with students after providing them alcohol. Student 5 Depo., p. 48 ("Every time he would buy me alcohol, a couple hours later, he would always ask if he could hang out with me. . . I'm sure he wanted to take advantage of the fact that I was drinking.").

**Defendants' Response:** Disputed. The cited source does not support the statements contained in Paragraph 83 above, as required under Local Rule 56.1. Student 5's testimony concerns her own experiences, only, and does not address those of any other student. Student 5 dep., p. 48.

**Plaintiff's Statement:**

84. He attended parties with students where alcohol was present. Police Report, Ex. I ("In the summer of 2008, Student 12 saw Weixler at a party in the woods someplace in Popponesset where alcohol was present"); ("Two (2) years ago Student 15 was at a party in the woods where alcohol was present. Weixler was also present."); Student 2 Depo., pp 37-38 (testifying that Weixler attended a party with her and Student 3 at which alcohol was served in the fall of 2008);

Deposition of Student 3 (Student 3 Depo., pp. 22-23, 57) (testifying that Weixler drove her and Student 2 to a party where alcohol was served).

**Defendants' Response:** Admitted in part; disputed in part. The statement contained in Paragraph 84, with respect to the Police Report reference, fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Therefore, it should be disregarded. The defendants dispute this Statement as it cites inadmissible hearsay in the form of the Mashpee Police Department Police Report relative to Weixler's arrest. The defendants otherwise admit the contents of the Report.

**Plaintiff's Statement:**

85. By early November of 2008, Jill was receiving general education accommodations that involved primarily allowing Jill to remain out of class. The accommodations included (1) sending Jill to guidance if her behaviors (such as crying related to her cousin's death) raised any concerns; (2) granting leniency to Jill regarding misbehavior and failure to complete assignments; (3) increased latitude as to arriving late to class and the ability to leave class when she felt it necessary; (4) reduced and modified work in classes; (5) extended time to complete assignments. IPR p. 8, No. 9, Ex. C to Motion for Summary Judgment as to Section 504 and ADA Claims ("MSJ-Section 504/ADA Claims").

**Defendants' Response:** Disputed as to plaintiff's characterization of the accommodations. Nine accommodations are noted in Answer No. 9 to Ex. C, cited above.

**Plaintiff's Statement:**

86. In addition, Jill could access assistance that was available to any non-disabled student, including meeting with guidance on an as needed basis and seeking extra help and tutoring from her teachers. The accommodations were not based on a Functional Behavior

Assessment ("FBA") (a process for determining the cause of function of a behavior) in order to develop a proper interventions, nor did the Defendants develop a Behavior Intervention Plan ("BIP").  Deposition of Carla Thomas, p. 49-51.

**Defendants' Response:**  Disputed.  The cited source does not support the statements contained in Paragraph 86 above, as required under Local Rule 56.1.  The former SPED Director, Carla Thomas, was asked, ". . . Did anyone ever conduct an FBA for [Jill Doe]," to which she replied, "I don't know."  Later, Ms. Thomas was asked if a BIP was put in place for Jill Doe while she was a general education student at Mashpee Public Schools, and Ms. Thomas testified she did not know.  *Id.* at 148.

**Plaintiff's Statement:**

87. By mid-November, Jill was vulnerable and struggling as a result of depression and anxiety related to her cousin's death, and general education accommodations were not resolving her educational deficiencies that resulted from those issues. BSEA Decision, pp. 8-11, Ex. A of MSJ-Section 504/ADA Claims; *See also* Dr. Berkowitz Report, p. 25-26, Ex. B to MSJ-Section 504/ADA Claims.

**Defendants' Response:**  Disputed.  The cited sources do not support the statements contained in Paragraph 87 above, as required under Local Rule 56.1.  Further, Paragraph 87 cites hearsay in the form of Dr. Berkowitz's Report.  Therefore, it should be disregarded.

**Plaintiff's Statement:**

88. On a Friday in mid-November Weixler drove Jill to a secluded beach where he assaulted her in the back seat of his car. SAIN Interview, Ex. B.

**Defendants' Response:**  Admitted, and note that this incident was preceded by Weixler sending Jill several text messages at home, at night, which she did not tell her older sister or parents.

**Plaintiff's Statement:**

89. Jill did not immediately report the assault to any adult, fearing that no one would believe her. Dr. Berkowitz Report at 28, Ex. B to MSJ-Section 504/ADA Claims.

**Defendants' Response:** Admitted in part; disputed in part. The cited source does not support the statements contained in Paragraph 89 above, as required under Local Rule 56.1. Further, Paragraph 89 cites inadmissible hearsay in the form of Dr. Berkowitz's Report. Therefore, it should be disregarded. The defendants admit that Jill did not report the assault to any employees of Mashpee School Department until on or about March 12, 2009.

**Plaintiff's Statement:**

90. After the assault, Weixler engaged in a pattern of sexually harassing and abusing Jill during school. Jill Doe Statement, 3/12/09, Ex D; Mashpee Police Department Incident Report ("Police Report"), Ex. I.

**Defendants' Response:** Denied.

**Plaintiff's Statement:**

91. Weixler verbally harassed Jill in the hallways at school. Jill did what she could to avoid him including purposely taking routes to class that would avoid his classroom. Statement of Jill Doe, Ex. C.

**Defendants' Response:** Disputed. When Stephen Weixler was asked, "Did you ever attempt to interact with her in school," he answered, "I saw her around school, but I never tried to interact." Weixler dep., p. 200. Further, none of the thirty-two witnesses deposed in this matter testified they witnessed this alleged "harassment." The defendants also object to the Statement in Paragraph 91 on the grounds that it cites inadmissible hearsay in the form of the plaintiff's own Statement.

**Plaintiff's Statement:**

92. After Weixler assaulted her, Jill's behavior deteriorated significantly both at school and at home, and her grades declined more dramatically. Teachers and administrators at Mashpee observed the changes in Jill's behavior. Defendant Day admitted that Jill's behaviors were more severe after the rape. She further testified that "in the very beginning of freshman year, there were minor discipline issues. The frequency with which she left the classroom grew as the year went on." BSEA Hr'g Tr., Jane Day ("Tr. Day"), p 237.

**Defendants' Response:** Admitted in part; disputed in part. The cited source does not support the statements contained in Paragraph 92 above, as required under Local Rule 56.1. Moreover, said statement does not set forth "material facts," but opinion. Therefore, the statement contained in Paragraph 92 should be disregarded. Notwithstanding these objections, the defendants admit that Jane Day gave such testimony at the BSEA Hearing.

**Plaintiff's Statement:**

93. At the end of November, after the rape, Jill was identified by the Child Study Team as eligible for Dolan's Anger Management Group. That group, however, was not scheduled to begin until March of 2009. IPR p. 9-10, No. 11, Ex. C. to MSJ-Section 504/ADA Claims.

**Defendants' Response:** The cited source does not support the statements contained in Paragraph 93 above, as required under Local Rule 56.1. Otherwise, admitted.

**Plaintiff's Statement:**

94. By January of 2008, Farrell had been seeing Jill frequently enough that she should have noticed the second steep decline in Jill's behaviors. On January 28, 2009, Farrell wrote an email to Mrs. Doe stating:

> I am concerned about Jill, however, being "stuck" in the grieving process. Every time Jill has an issue, it seems that her cousin's death is somehow at the root of it.

Everyone grieves in their own time and own way, but I believe this has really gotten in the way of her progress in school.

Email from P. Farrell to Jane Doe, dated January 28, 2009, Supplemental Exhibit 1.

**Defendants' Response:** Admitted in part; denied in part. First, the defendants believe that plaintiff meant to state, "By January of 2009," not "2008." Next, Paragraph 94 contains inadmissible lay witness opinion, rather than material facts as required by Local Rule 56.1. Notwithstanding these objections, the defendants admit the content of Patricia Farrell's email.

**Plaintiff's Statement:**

95. Rather than request consent for an evaluation to address the lack of academic progress at school, Farrell referred Jill to outside grief counseling. *Id.*

**Defendants' Response:** Admitted in part; disputed in part. The defendants dispute plaintiff's characterization of Patricia Farrell's actions but otherwise admit that Ms. Farrell did not request consent for an evaluation at that time, *i.e.*, January, 2009.

**Plaintiff's Statement:**

96. In late January or early February of 2009, Assistant Principal Day met with Mrs. Doe to discuss Jill's educational issues. Day testified that by January, she was aware that "issues around Jill's grief were impeding her ability to stay in the classroom." Tr. Jane Day, 20-24 (Nov. 28, 2011).

**Defendants' Response:** Denied. The cited source does not support the statements contained in Paragraph 96 above, as required under Local Rule 56.1.

**Plaintiff's Statement:**

97. At this time, it had been six months since Jill's cousin died, and Jill's oppositional behaviors and symptoms of depression only continued to increase. Jill was having difficulty

waking up in the morning, and Mrs. Doe constantly struggled to get her to school. *Id. See also* Email Jane Day to Jane Doe, Ex. F to MSJ-Section 504/ADA Claims.

**Defendants' Response:** Denied. The cited sources do not support the statements contained in Paragraph 97 above, as required under Local Rule 56.1.

**Plaintiff's Statement:**

98. In January, 2009, Russell Perry was a staff member of the Boys & Girls Club who supervised an after school program at Mashpee High School. On January 9, 2009, Perry reported to Principal Winrow and Assistant Principal Jane Day that he had overheard on two separate occasions students discussing that Weixler was engaged in an inappropriate relationship with a student ("the Winrow/Day Report"). Investigation Reports, (Day) Ex. J., (Winrow) Ex. K.

**Defendants' Response:** Admitted in part; denied in part. The cited sources do not support the statements contained in Paragraph 98 above, as required under Local Rule 56.1. Russell Perry met with Alan Winrow and Jane Day on January 9, 2009, at which time he (Perry) stated that he wanted to report that he had heard two unidentified students talking about a "rumor" concerning Weixler's involvement with a female student ("Student 2"). Perry emphasized that it was just a rumor. *See* Defendants' List of Exhibits in Support of Their MSJ, Vol., II, Ex. J & K. *See also* Defendants' Local Rule 56.1 Concise Statement of Material Facts, ¶ 144.

**Plaintiff's Statement:**

99. In January, 2009, Russell Perry was a staff member of the Boys & Girls Club who supervised an after school program at Mashpee High School. On January 9, 2009, Perry reported to Principal Winrow and Assistant Principal Jane Day that he had overheard on two separate occasions students discussing that Weixler was engaged in an inappropriate relationship with a

student ("the Winrow/Day Report"). Investigation Reports, (Day) Ex. J., (Winrow) Ex. K. Winrow and Day reported this information to Bradshaw.

**Defendants' Response:** Disputed. Please see defendants' Response to No. 98 above.

**Plaintiff's Statement:**

100. Bradshaw did not instruct staff to make a referral to DCF or the police at any time during this investigation. She again instructed them to conduct an internal investigation. Bradshaw Depo at 211-218. Bradshaw did not provide any information about prior reports of misconduct by Weixler. Investigation Reports, (Day) Ex. J., (Winrow) Ex. K. Instead, Bradshaw informed Winrow and Day only that Weixler had been looked into on a prior occasion, but told him that "there was nothing there." Mashpee's Answers to Interrogatories and Production Request ("IPR"), No. 6, Ex. G.

**Defendants' Response:** Admitted in part; denied in part. The defendants dispute plaintiff's characterization of the unsubstantiated rumor that Weixler was dating a student as "the prior reports." There were not "prior reports," but an unsubstantiated rumor Weixler was dating a student, which was investigated and found to be without merit. Bradshaw dep., pp. 15-16, 22-23, 141, 150; St. Cyr dep., pp. 31-32, 34, 35-36, 38, 49, 51-52; Babbitt dep., pp. 84-86. The defendants admit that Superintendent Bradshaw so advised Alan Winrow and Jane Day at that time.

**Plaintiff's Statement:**

101. Winrow did not ask for details of the prior report. Day likewise did not ask for details of the report and stated "an assistant principal doesn't jump over the principal to speak to the superintendent. That's not the hierarchy." Deposition of Jane Day ("Day Depo"), p. 165.

**Defendants' Response:** Admitted in part; denied in part. Ms. Day did not testify regarding Alan Winrow's actions. Day dep., p. 165. Otherwise: Admitted.

**Plaintiff's Statement:**

102. Stephen Babbitt also participated in the investigation, but failed to provide any information about his knowledge of the prior reports to either Day or Winrow. Winrow Depo., pp. 77-78. Neither Day nor Winrow asked Babbitt about his prior knowledge. Day Depo., p. 26; 42-44; 79-80; Winrow Depo., p. 36, 41.

**Defendants' Response:** Admitted in part; denied in part. There were not "prior reports," but an unsubstantiated rumor Weixler was dating a student, which was investigated and found to be without merit. Bradshaw dep., pp. 15-16, 22-23, 141, 150; St. Cyr dep., pp. 31-32, 34, 35-36, 38, 49, 51-52; Babbitt dep., pp. 84-86. Otherwise: Admitted.

**Plaintiff's Statement:**

103. Jane Day and Adjustment Counselor Rewa Melby interviewed Student 2 at approximately 8:00 on Monday morning. An incident report notes: "We opened with a question about what appropriate teacher-student relations entail and what might fall into the inappropriate realm." Before Student 2 was informed of the reason for the discussion, she asked: "Is this about the rumor . . . about Stevie Weixler and me?" At no time did Day or Melby ask about the details of the rumor she referenced. Student 2 informed them that 'this rumor has been going around since last May,' and she stated that the last time she heard it herself was in the fall of this year. . . She was adamant that she is safe and that Mr. Weixler would never do such a thing." Day Report, Ex. J.

**Defendants' Response:** Admitted in part; denied in part. The cited source does not support the statements contained in Paragraph 103 above, as required under Local Rule 56.1. Ms. Day's

report indicates she and Ms. Melby asked Student 2 "if any teacher at MHS had crossed that line from appropriate to inappropriate with her, [and] she stated 'no'." Student 2 then asked if this was about the rumor referenced in the statement above. Student 2's response was therefore not provided "before [she] was informed of the reason for the discussion."

**Plaintiff's Statement:**

104. Winrow and Babbitt interviewed Stephen Weixler at approximately 8:00 that Monday. Before being told of the reason for the discussion, Weixler offered that he knew there to be a "rumor about him and a student named Student 3." Specifically, "he heard 'last week' that he 'hooked up' with Student 3 from Student 10, who is the sister of his brother's girlfriend." Winrow Report, Ex. K.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

105. The Incident Report further notes: "When asked directly if there had ever been any other contact or inappropriate behavior with either student, Mr. Weixler said, 'No.' He stated that there was no truth to the rumor. He said that he was pursuing a position as a fireman and would never jeopardize his future by becoming involved in something like this [with students]." (Brackets in original). Winrow Report, Ex. K.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

106. Pending this investigation, Weixler was not placed on administrative leave. Instead he was sent back to serve as a paraprofessional in the classroom. Administrators did not ask him to allow them to review his texts or emails. St. Cyr Depo., p. 234. *See also* Weixler Depo p. 120.

**Defendants' Response:** The defendants admit that Lou Ann St. Cyr testified she "never had reason to do that." Other "Administrators" were not asked this question, and Weixler did not give such testimony on the page citation provided.

**Plaintiff's Statement:**

107. Day and Melby interviewed Student 3 at approximately 10:45 a.m. The incident report notes, "We started by asking her to define 'appropriate' and 'inappropriate,' and before she even answered that question, she said, 'This is about the Stevie Weixler Rumor, isn't it.?' We said it was and she said, 'That rumor's been going around for a while.' We asked, 'How long is a while?' She stated she first heard it last spring and heard it again this September. We asked her, 'is there any truth to that?' She firmly stated, 'No.' . . . 'Student 3 insisted she was safe and does not feel threatened by Mr. Weixler.'" Day Report, Ex. J.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

108. Student 3's statement to Assistant Principal Day, who was not trained in interviewing victims of child abuse, is contradicted by Weixler's testimony wherein he asserted his Fifth Amendment Right against self-incrimination when asked if he had sexual intercourse with Student 3. While Student 3 still denies a sexual relationship, she admits that she was afraid to be honest in this investigation. Student 3 Depo., 61-62.

**Defendants' Response:** Disputed. The statement contained in Paragraph 108 regarding Weixler's testimony fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Therefore, it should be disregarded. Further, Weixler's invocation of his Fifth Amendment Right and his refusal to testify results in an absence of evidence and only permits—*but does not mandate*—an adverse

inference against him. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *see also In re Carp*, 340 F.3d 15, 23 (1st Cir. 2003). Weixler's refusal to testify one way or another cannot be "contradicted." Student 3 testified unequivocally, under oath, that she was never sexually involved with Weixler. Student 3 Dep., p. 19.

**Plaintiff's Statement:**

109. After the interview with Student 3, Mr. Winrow, Mrs. Day and Mr. Babbitt questioned Student 10 about the report. She acknowledged that she heard the information in math class when two students— Student 16 and Student 17—were discussing that "Stevie Weixler" had "hooked up" with Student 3. Because she knew Mr. Weixler, she "wanted him to know about it." Winrow Report, Ex. K.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

110. No one interviewed Student 16 and Student 17 in connection with the Winrow/Day Report. Day Report, Ex. J.; Winrow Report, Ex. K.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

111. The defendants did not report the information disclosed in January to the Department of Children and Families or the Police in connection with the Winrow/Day Report. Mashpee's Answers to Interrogatories and Production Requests ("IPR"), No. 6, Ex. G.

**Defendants' Response:** Denied. The cited source does not support the statements contained in Paragraph 111 above, as required under Local Rule 56.1. Alan Winrow testified that he advised the School Resource Officer, Lisa Hettinger, of the Weixler-related "rumor" reported by Russell Perry of the Boys & Girls Club in January, 2009. Winrow dep., pp. 290-291.

**Plaintiff's Statement:**

112. The defendants did not interview any other girls in the school, except those noted in Paragraphs 103-109, or speak with any girls on the soccer team in connection with the Winrow/Day Report. Day Report, Ex. J.; Winrow Report, Ex. K.

**Defendants' Response:** Admitted in part; disputed in part. The defendants dispute plaintiff's characterization of the defendants' interviews. The defendants interviewed three students and Stephen Weixler. Ms. Melby spoke with Student 2's mother (who denied any knowledge of any relationship with Weixler), and left a voicemail message for Student 3's mother. Day dep., pp. 80-81 & 84-88; Melby dep., pp. 58, 62, 71-75, 80-85, 104, 117, 169. Otherwise, admitted.

**Plaintiff's Statement:**

113. The defendants did not terminate Weixler, or discipline or provide any coaching to him in connection with the Winrow/Day Report. Mashpee's Answers to Interrogatories and Production Requests ("IPR"), No. 6, Ex. G.

**Defendants' Response:** The cited source does not support the statements contained in Paragraph 113 above, as required under Local Rule 56.1. Otherwise, admitted.

**Plaintiff's Statement:**

114. The defendants did not supervise Weixler more closely in connection with the Winrow/Day Report. Weixler Depo., p. 119-120.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

115. Weixler thereafter began a substantial sexual relationship with Student 6, a 17 year-old senior at Mashpee High School, on February 14, 2009. Police Report, Ex. I.

**Defendants' Response:** The statement contained in Paragraph 115 fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Therefore, it should be disregarded. Further, the defendants dispute this Statement as it cites inadmissible hearsay in the form of the Mashpee Police Department Police Report relative to Weixler's arrest. Otherwise: Admitted.

**Plaintiff's Statement:**

116. By February of 2009, Day, Dolen, and Farrell were aware that Jill was yelling at other people without consistent control; was leaving class frequently without permission, had difficulty controlling her anger, and that many interpersonal reactions "pissed her off." IPR, p 4, No. 5, Ex. C.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

117. The Team was aware that Jill continued to exhibit these behaviors even with the adjustment counseling that started in January. They were aware that Jill had taken the State Trait Anger Expression Index, and that her results showed significant anger issues. Tr. Jane Day, p 76.

**Defendants' Response:** Disputed. The cited source does not support the statements contained in Paragraph 117 above, as required under Local Rule 56.1. Regarding Jill's exhibiting behaviors, Ms. Day was only asked if she was aware that in 2009, Jill continued to leave class without teacher permission. *Id.* at 77.

**Plaintiff's Statement:**

118. According to Dolan, Jill "exhibited signs of depression, mood swings with anger discharge/displacement" before March of 2009. IPR p. 13, No. 16, Ex. C. The Team was

likewise aware that Jill's grades continued to worsen. Tr. Day at 80. Despite this knowledge, at no time during this period was Jill evaluated for special education.

**Defendants' Response:** Disputed. The cited sources do not support the statements contained in Paragraph 118 above, as required under Local Rule 56.1. Ms. Day did not testify at the BSEA Hearing as to the knowledge of "The Team," but was only asked, "were you aware." BSEA Hearing, Jane Day Testimony, p. 80. Further, the sentence quoted above reads, in full, Jill "exhibited signs of depression, mood swings with anger discharge/displacement before her March 12, 2009 disclosure of the sexual assault, but there was an absence of evidence of post traumatic stress." IPR p. 13, No. 16, Ex. C.

**Plaintiff's Statement:**

119. In February of 2009, Jane and John Doe met with Winrow, Dolen and Day as well as Janet McFarlane, Assistant Chief Probation Officer of the Barnstable County Juvenile Court Department, and Laura Roach, a representative from the Department of Children and Families, to discuss Jill's behavior. The group recommended a stubborn child Child In Need of Services "CHINS" petition, seeking court interventions rather than addressing Jill's issues within the school. Compl. at ¶ 46.

**Defendants' Response:** Admitted; however, Alan Winrow does not recall whether or not he participated in this meeting.

**Plaintiff's Statement:**

120. During this period, Jill remained enrolled in regular education classes, despite the fact that her emotional well-being continued to deteriorate, her grades declined and she could not access her classes. Instead, Jill sat in the guidance office repeatedly, was frequently truant, and demonstrated emotional outbursts in school. By this time, it was unreasonable to attribute these

issues simply to the grief Jill experienced as a result of her loss. *See* BSEA Decision, 10-14, Ex. A of MSJ-Section 504/ADA Claims.

**Defendants' Response:**  Disputed.  The cited source does not support the statements contained in Paragraph 120 above, as required under Local Rule 56.1.  Paragraph 120 contains inadmissible lay witness opinion, rather than material facts as required by Local Rule 56.1.  Still, the defendants admit that Jill remained in regular education classes in the spring, 2009.

**Plaintiff's Statement:**

121.  On Friday, March 6, 2009, two gym teachers, Brian Corrigan and Matthew Donahue, overheard Student 7 speaking about Stephen Weixler's conduct. They approached her and she confided to them Weixler was texting students on the soccer team, buying alcohol for students and that he had intercourse with Student 3. She informed them that this occurred at a party and that Student 2 and Student 18 were downstairs at the time. She further informed them that Student 3 was bragging to her friends that this is happening but "she'll never give it up to the office." Student 7 stated that she saw text messages from Weixler to Student 5 a few weeks ago, that they were explicit and that Student 5 was scared. Matthew Donahue reported all of this information to Principal Day at approximately 2:25 on that day. Day Notes, Ex. L.

**Defendants' Response:**  Admitted.

**Plaintiff's Statement:**

122.  At 4:30, administrators Winrow, Day, and Babbitt met with Student 7 and her mother.  Student 7 informed them that she had been called in by Principal St. Cyr in March or April of 2008 and that she informed her then that Weixler was dating Student 1. She was concerned that Weixler was now targeting younger girls as he was known to be having sex with Student 3, and he was pursuing Student 2. Day Notes, Ex. L

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

123. After the discussion, Winrow called School Resource Officer Lisa Hettinger, but he provided only limited information. According to the Police Report, Winrow informed her of the following: "On 3/6/09, at approx. 1751hrs, I (Hettinger) was advised via cellular telephone that school administrators were conducting an administrative investigation involving the professional conduct of a teacher. They were acting on a rumor that a teacher/coach was having inappropriate contact with students. The teacher inappropriately conversed with the students and may have supplied them with alcohol. He was immediately placed on administrative leave pending the outcome." Police Report, Ex. I.

**Defendants' Response:** Admitted in part; disputed in part. The statement contained in Paragraph 123 fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Therefore, it should be disregarded. The defendants dispute plaintiff's characterization that Mr. Winrow provided "only limited information" as an inadmissible statement of opinion, rather than material fact as required by Local Rule 56.1. Further, this Statement cites inadmissible hearsay in the form of the Mashpee Police Department Police Report relative to Weixler's arrest. The defendants otherwise admit the contents of the Report.

**Plaintiff's Statement:**

124. Winrow did not provide Officer Hettinger with Student 7's name, despite the scope and significance of the information provided by her to the defendants; he did not inform her that Weixler was alleged by multiple students to have engaged in statutory rape having had sexual intercourse with Student 3, who was 15 years old at the time; he did not inform her of any prior

reports of impropriety by Stephen Weixler, including the report he had just previously investigated in January, 2009. *Id*.

**Defendants' Response:** Disputed. The cited source does not support the statements contained in Paragraph 124 above, as required under Local Rule 56.1. Further, the evidence in the summary judgment record does not support the statement contained in Paragraph 124 that "Weixler was alleged by multiple students to have engaged in statutory rape having had sexual intercourse with Student 3 . . . ." Further, this Statement cites inadmissible hearsay in the form of the Mashpee Police Department Police Report relative to Weixler's arrest.

**Plaintiff's Statement:**

125. Weixler returned to the school on Monday, March 9, 2009. Notes from March 9, 2009 Meeting, Ex. M; Letter, Ex. N.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

126. Weixler was interviewed at 1:00 p.m. by Winrow, Babbitt and Day. Susan Van Toll was in attendance. Weixler denied any involvement. He was placed on administrative leave on March 10, 2009. Notes from March 9, 2009 Meeting, Ex. M; Letter, Ex. N.

**Defendants' Response:** Admit, but note that Weixler was placed on Administrative Leave on March 9, 2009. Notes from March 9, 2009 Meeting, Ex. M; Bradshaw dep., pp. 197-198, 200.

**Plaintiff's Statement:**

127. The defendants did not call the Department of Children and Families or turn over the investigation to the police. Their investigation remained internal. Mashpee's Answers to Interrogatories and Production Requests ("IPR"), Nos. 6, 7, Ex. G.

**Defendants' Response:** Disputed. The defendants dispute plaintiff's characterization of the defendants' actions. Alan Winrow contacted the Mashpee Police Department on March 12, 2009, when Jill Doe first disclosed the full extent of Weixler's sexual assault to John Dolen, Adjustment Counselor, and Shawn Chicoine (Jill's hockey coach). Chicoine dep., pp. 45-56. The next day, John Dolen filed a Section 51A report with the Department of Children & Families. Vol. II, Exh. N.

**Plaintiff's Statement:**

128. At some point, Jill disclosed to Student 19, a student at Falmouth Public Schools, that something had happed between her and Stephen Weixler. After speaking with her own parents, Student 19 called Jane Doe and informed her that something inappropriate had happened between Jill and Weixler. Jane informed John Doe. John was the assistant coach for the hockey team that Jill played on. He went to the school on Friday and informed Sean Chiccoine, Head Coach for the hockey team and Jill's math teacher, that he was informed that something had happened between Jill and Weixler. He approached Chiccoine as a friend and expected the conversation to be "off the record" while he determined the next steps to help Jill. Chiccoine recommended that John inform administration. He did not suggest that he call the police or DCF, and he did not do so himself. Deposition of John Doe ("John Doe Depo."), pp 169-71.

**Defendants' Response:** Admitted, except that the defendants cannot comment on John Doe's statement that he believed his conversation with Sean Chicoine was "off the record."

**Plaintiff's Statement:**

129. Chiccoine instead informed administration about John's report to him on the morning of Monday March 9, 2009, before the Does had an opportunity to call the school. John Doe Depo., pp 169-71.

**Defendants' Response:**  Disputed.  Chicoine testified John Doe approached him "a day or two before the disclosure" of March 12, 2009.  Chicoine dep., p. 95.  John Doe testified that after he spoke with Shawn Chicoine, Chicoine and Dolen "immediately from that took action on my behalf."  John Doe Dep., pp. 170-171.

**Plaintiff's Statement:**

130.  Adjustment Counselor John Dolen pulled Jill out of class to interview her about Weixler. *Id.*

**Defendants' Response**:  The cited source does not support the statement contained in Paragraph 130 above, as required under Local Rule 56.1.  Otherwise, admitted.

**Plaintiff's Statement:**

131.  Dolen did not have any specialized training in forensic interviews of victims of sexual assault and abuse.  BSEA Decision, p. 12, Ex. A of MSJ-Section 504/ADA Claims.

**Defendants' Response:**  Disputed.  The cited source does not support the statement contained in Paragraph 131 above, as required under Local Rule 56.1.  In fact, p. 12, ¶ 18 of the BSEA Decision, cited above, indicates Dolen "has a master's degree in social work and has significant experience and expertise working with adolescents with emotional and behavioral difficulties, including trauma survivors.  He has received continuing professional education in the area of counseling trauma survivors."

**Plaintiff's Statement:**

132.  Dolen's first interview occurred prior to any discussion with Jill's parents and without their permission. *Id.* Doe Depo., pp. 169-171.

**Defendants' Response:**  Disputed.  The cited source does not support the statement contained in Paragraph 132 above, as required under Local Rule 56.1.  John Doe was asked, "were you

involved in the decision to allow that conversation to take place?"  He answered, "yes."  Further, John Doe testified that after he spoke with Shawn Chicoine, Chicoine and Dolen "immediately from that took action on my behalf."  John Doe Dep., pp. 170-171.

**Plaintiff's Statement:**

133. Jill indicated to Dolen that something had happened, but was reluctant to fully disclose the rape. Dolen sent her back to class. He did not call the Department of Children and Families, or the police. He thereafter informed the Does of his discussion and confirmed that something had happened. *Id.*

**Defendants' Response:**  Admit, but the defendants note that the cited source does not support the statement contained in Paragraph 133 above, as required under Local Rule 56.1.

**Plaintiff's Statement:**

134. Winrow and Dolen informed the Does that they needed Jill to disclose what happened before they could take any action. *Id*

**Defendants' Response:**  Disputed.  The cited source does not support the statement contained in Paragraph 132 above, as required under Local Rule 56.1.

**Plaintiff's Statement:**

135. No one informed the Does of prior investigations or that Weixler was alleged previously of committing statutory rape. *Id*

**Defendants' Response:**  Disputed.  The cited source does not support the statements contained in Paragraph 135 above, as required under Local Rule 56.1.  Further, the evidence in the summary judgment record does not support the statement contained in Paragraph 135 that, other than the disclosures made by Student 7 a few days earlier, "Weixler was alleged previously of committing statutory rape."

**Plaintiff's Statement:**

136. From Monday to Thursday, Dolen had several discussions with Jill seeking her a specific disclosure from her about what occurred with Weixler. Tr. Dolen, pp. 71-72; 77; 79-80.

**Defendants' Response:** Admitted in part; disputed in part. The cited source does not support the statements contained in Paragraph 136 above, as required under Local Rule 56.1, as Mr. Dolen did not testify this took place over the course of four days. Any such questioning took place over approximately two days, not four. *See* Mashpee School Committee's Answers to Plaintiff's First Set of Interrogatories, Ex. G, Answer No. 6. Otherwise, admitted.

**Plaintiff's Statement:**

137. From 9:00 – 10:15, Thursday March 12, 2009, Jill disclosed the incident that occurred in the car in an interview with Dolen and Chiccoine, her hockey coach. She disclosed the incident in the car up to the point of the rape, but was unable to verbally state what occurred after that point, so she described it on paper. Written Statement, Ex. C.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

138. Jill was then sent home with her parents. Chiccoine informed Winrow of the disclosure. Winrow contacted the police at 11:55 a.m. Police Report, Ex. I.

**Defendants' Response:** Admitted in part; disputed in part. The statement contained in Paragraph 138 fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Therefore, it should be disregarded. The defendants dispute this Statement as it cites inadmissible hearsay in the form of the Mashpee Police Department Police Report relative to Weixler's arrest. The defendants otherwise admit the contents of the Report.

**Plaintiff's Statement:**

139. At 12:50 p.m., Officer Hettinger contacted Jane Doe and asked that Jill be brought to the Children's Cove for SAIN (Sexual Assault Intervention Network) interview. Officer Hettinger explained to Jane that the interview would be conducted by a civilian trained child interviewer. Jane agreed to the process and brought Jill to the Cove. Police Report, Ex. I.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

140. Jill's interview began at 2:25 p.m. She struggled and was reluctant to disclose the rape again. She said to Mr. Fontes that she "had talked to [her hockey coach and guidance counselor] already about what happened and she was tired of it." Her initial interview concluded at 2:50 p.m. when she became distant and stopped talking.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

141. Shortly thereafter, Weixler confessed. Police Report, Ex. I.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

142. When informed that Weixler was in the process of disclosing the assault, Jill was willing to speak with Mr. Fontes again. Jill's second interview began at 3:45 p.m., and she provided the details of what occurred in the car. Police Report, Ex. I.

**Defendants' Response:** Admitted

**Plaintiff's Statement:**

143. At the time of Jill's interview, Weixler was interviewed by Detectives Waterfield and Carline of the Mashpee Police Department. His interview began at 3:01 p.m. By 3:51 p.m. on March 12, 2009, Weixler confessed to the statutory rape of Jill Doe. Police Report, Ex. I.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

144. On March 16, 2009 and March 17, 2009, the detectives interviewed twenty two students, and a paraprofessional. Their interviews revealed some, but not all of the additional victims. Victims and witnesses disclosed that Weixler had provided alcohol to at least seven girls, texted inappropriately with at least five girls, and engaged in a sexual relationship with a 17 year-old student. Police Report, Ex. I.

**Defendants' Response:** Admitted in part; disputed in part. The statement contained in Paragraph 144 fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Therefore, it should be disregarded. The defendants dispute this Statement as it cites inadmissible hearsay in the form of the Mashpee Police Department Police Report relative to Weixler's arrest. The defendants otherwise admit the contents of the Report.

**Plaintiff's Statement:**

145. The detectives were not provided information from the school about the report by Student 7 to Brian Corrigan, Matthew Donahue and the administrators. Waterfield Depo., p. 77, 79, 82-85; Hettinger Depo., p. 90-91. Their names do not appear anywhere in the police report, and the police did not interview any of those individuals. Police Report, Ex. I.

**Defendants' Response:** Admitted in part; disputed in part. The defendants dispute this Statement to the extent it cites inadmissible hearsay in the form of the Mashpee Police Department Police Report relative to Weixler's arrest. The defendants otherwise admit the contents of the Report.

**Plaintiff's Statement:**

146. The defendants did not provide information about any prior investigation by the school, including the January 9, 2009 investigation involving Student 3 or the prior reports regarding Student 1. The police were not informed of the Art Class Report, the Stanley Report, the Grady Report, the two Bradshaw Reports or the St. Cyr Report. Deposition of Robert Waterfield ("Waterfield Depo."), pp. 76-77.

**Defendants' Response:** Disputed. There was no so-called "Art Class Report." *See* the Affidavits of Lou Ann St. Cyr and the two MHS Art Teachers, Document Nos. 99-101; *see also* Response to SOF ¶¶ 20-21, above. There were not two "Bradshaw Reports," a "Grady Report," and a separate "St. Cyr Report." These were part and parcel of the same investigation. Likewise, there was no "Stanley Report." *See* Response to ¶¶ 10, 20-21, 30, 36-36, 44.

**Plaintiff's Statement:**

147. Neither Jane Day nor Alan Winrow provided their investigation notes from January or March to the police. Despite the fact that Student 3 was identified as a victim of statutory rape by Stephen Weixler, she was not identified as such to the police by any of the defendants, and there is no indication in the police report that witnesses informed the school that Weixler had sexual intercourse with her. Student 3 was never engaged in a SAIN interview, and no defendant followed up with her to ensure her safety. Police Report, Ex. I.

**Defendants' Response:** Disputed. The statement contained in Paragraph 147 fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Therefore, it should be disregarded. Further, the cited source does not support the statements contained in Paragraph 147 above, as required under Local Rule 56.1. Student 3 was not "identified as a victim of statutory rape by Stephen Weixler." When Jane Day and Rewa Melby spoke with her, Student 3 denied engaging in any inappropriate behavior with Weixler. Ms. Melby also left a voicemail message for Student 3's mother. Vol. II, Exhibits J and K; Day dep., pp. 80-81 & 84-88; Melby dep., pp. 58, 62, 71-75, 80-85, 104, 117, 169. Student 3 testified unequivocally that she was never sexually involved with Weixler. Student 3 Dep., p. 19. Further, the defendants dispute this Statement as it cites inadmissible hearsay in the form of the Mashpee Police Department Police Report relative to Weixler's arrest.

**Plaintiff's Statement:**

148. Weixler was arrested on March 13, 2009. He entered a plea agreement admitting to one count of indecent assault and battery on a person 14 or older in addition to a charge of disseminating harmful matter to a minor and three counts of buying alcohol for minors. He was sentenced to six months in jail. Weixler Depo., p. 50.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

149. In June, 2010, the plaintiff, through counsel, filed a request for a due process hearing before the Bureau of Special Education Appeals, which letter referenced the plaintiff's federal claims. *See* April 23, 2010 Letter to Reece Erlichman, Supplemental Ex. 2.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

150. In September, 2011, the plaintiffs, through counsel, filed a Presentment Letter. *See* September 27, 2010 Presentment Letter, Supplemental Ex. 3.

**Defendants' Response:** Admitted, though the defendants believe the plaintiff meant to state, "September, 2010."

**Plaintiff's Statement:**

151. In May, 2012, Kathy Stanley destroyed all of her notes she had taken in her capacity as a school committee member. Stanley Depo., pp. 39-43.

**Defendants' Response:** Admitted in part; disputed in part. Kathy Stanley testified she did not keep her "own personal little notes, and I never kept them as a record. Minutes generally contained everything that was in a meeting . . . ." Stanley dep., p. 39. Regarding any such personal notes she did take, she testified she "probably just threw them out" when she completed her tenure. *Id*. "Generally any notes I took were in the public meeting, so everything that went on in that public meeting or in an executive session were confirmed in minutes, so --" *Id*. at p. 42.

**Plaintiff's Statement:**

152. In 2009, Bradshaw permitted Sean Moroney to repurpose Stephen Weixler's computer. In the summer of 2010, she permitted him to destroy it. She likewise permitted him to destroy the server. Deposition of Sean Moroney ("Moroney Depo."), pp. 96-104.

**Defendants' Response:** Admitted in part; denied in part. Following his arrest, Weixler's desktop computer was turned over to the Mashpee Police Department. It was later returned to the School Department's IT Director, Sean Moroney, without any instructions to preserve it. Moroney dep., p. 98. Weixler's computer and several other computers were later discarded

(Summer, 2010) when they outlived their usefulness. *Id.*, p. 97. Mr. Moroney testified that he "assumed" Ann Bradshaw was aware that he planned to do so. *Id.*

**Plaintiff's Statement:**

153. After Jill's disclosure, Dolen was aware that Jill was traumatized by both reporting the assault, and the assault itself. He knew the assault was "traumatic and confusing to her." Jill "had this question as to why this whole thing was happening. Why Mr. Weixler was approaching her. [Dolen] saw it as a break in the trust relationship and that's what [he] attributed it to and that she found herself in this situation and was kind of confused as to how it all happened and why it happened." Tr. Dolen, p. 79.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

154. The fact that Weixler was Jill's soccer coach and an employee of the School "made it worse certainly." Tr. Dolen, p. 80.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

155. Dr. Barbara Berkowitz, Forensic Psychologist, noted the particular trauma resulting from the fact that Weixler was her soccer coach, testifying that it was a "dreadful, sad, horrible abuse of his power." BSEA H'rg Tr., Vol. VIII, Nov. 30. 2011.

**Defendants' Response:** Disputed. The defendants dispute this statement to the extent it contains inadmissible hearsay in the form of BSEA Hearing testimony, barred under Fed. R. Evid. 802. Further, these are not statements of material fact appropriate for inclusion in a statement of material facts under Local Rule 56.1. They are opinions. Therefore, this statement should be disregarded.

**Plaintiff's Statement:**

156. She testified that Jill "saw him as a supportive figure and he then betrayed her by abusing her vulnerability and her trust . . .for his own sexual pleasure." Dr. Berkowitz Report, p. 39, Ex. B of MSJ-Section 504/ADA Claims.

**Defendants' Response:** Disputed. The defendants dispute this statement to the extent it contains inadmissible hearsay, barred under Fed. R. Evid. 802. Further, these are not statements of material fact appropriate for inclusion in a statement of material facts under Local Rule 56.1. They are opinions. Therefore, this statement should be disregarded.

**Plaintiff's Statement:**

157. Dr. Berkowitz explained that the impact of this trauma for Jill on Jill's ability to access her education: "The school environment itself can become toxified. It becomes a place that's no longer safe. Playing soccer is no longer safe. Walking down the hall in school is no longer safe because you may run into this person as long as they're still there at the institution." Dr. Berkowitz Report, p. 39, Ex. B of MSJ-Section 504/ADA Claims.

**Defendants' Response:** Disputed. The defendants dispute this statement to the extent it contains inadmissible hearsay, barred under Fed. R. Evid. 802. Further, these are not statements of material fact appropriate for inclusion in a statement of material facts under Local Rule 56.1. They are opinions. Therefore, this statement should be disregarded.

**Plaintiff's Statement:**

158. Following Jill's disclosure, Mashpee convened a Crisis Response Team ("CRT") meeting. The CRT was made up of the same members as the CST and met twice. The initial meeting was also attended by Beth Biro from the Children's Cove. BSEA H'rg Tr., Volume VI, Nov. 28, 2011, Ann Bradshaw (BSEA Tr. Bradshaw"), p. 340.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

159. At the initial CRT meeting, Biro recommended that students be informed of the Weixler incident in small group settings. *Id*. at 344.

**Defendants' Response:** Disputed. The cited source does not support the statements contained in Paragraph 159 above, as required under Local Rule 56.1. Further, Alan Winrow testified "Beth Biro was supportive of our approach on this. She referred to our approach as being a textbook approach." Winrow dep., pp. 414-415. In addition, those claims related to peer-on-peer harassment have been dismissed. Memorandum And Order, p. 16-17 (Document No. 63).

**Plaintiff's Statement:**

160. Rather than follow the Cove's recommendation, however, the school informed the students, based on the request of Committee Member Kathy Stanley, in class-wide meetings. The result of this decision was that students speculated that Jill was the student who was raped. *Id*., p. 341.

**Defendants' Response:** Denied. The cited source does not support the statements contained in Paragraph 160 above, as required under Local Rule 56.1. Ms. Bradshaw testified the school "had a discussion with the principal and the Children's Cove people, and we came to . . . a resolution that everybody was comfortable with." *Id.* at 342. Again, claims related to peer-on-peer harassment have been dismissed. Memorandum And Order, p. 16-17 (Document No. 63).

**Plaintiff's Statement:**

161. On March 17, 2009, the Cape Cod Times printed that a "14 year-old freshman, a member of the junior varsity soccer team he coached" was the victim. Cape Cod Times, "Mashpee parents demand answers" March 17, 2002 (www.capecodonline.com). Cape Cod

Times, "Mashpee Parents Demand Answers." March 17, 2009, available at www.capecodonline.com.

**Defendants' Response:**  Admitted.

**Plaintiff's Statement:**

162. Because Jill was the only freshman from the JV soccer team not present at the freshman assembly, students guessed that she was the victim. BSEA Tr. Bradshaw, p. 341-43. Students blamed Jill for Weixler's termination, and as such, bullied, taunted, and criticized her during school. Berkowitz Report, p. 6, Ex. B Dr. Berkowitz Report, p. 39, Ex. B of MSJ-Section 504/ADA Claims; BSEA Tr. Berkowitz, p. 72.

**Defendants' Response:**  Disputed.  The cited source does not support the statements contained in Paragraph 162 above, as required under Local Rule 56.1.  Moreover, this Court has dismissed plaintiff's claims related to peer-on-peer harassment.  Memorandum And Order, p. 16-17 (Document No. 63).  Further, Ms. Bradshaw testified at the BSEA Hearing:

Q.    So if [Jill] was the only one who didn't show up, it made it pretty easy to –

A.    No.  No.

Q.    -- figure out --

A.    No.

Q.    -- who she -- who she was, didn't it?

A.    No.  No. You can't take an eyeball attendance in a group of 125 kids, 100 kids.  So I'm sure there were other kids who were absent that day.  So no.

BSEA Tr. Bradshaw, p. 343.

Further, the defendants dispute this statement above to the extent it contains inadmissible hearsay in the form of BSEA Hearing testimony by Dr. Berkowitz, which is barred under Fed. R.

Evid. 802. Further, the statements of Dr. Berkowitz's report are not statements of material fact appropriate for inclusion in a statement of material facts under Local Rule 56.1. They are opinions. Therefore, this statement should be disregarded.

**Plaintiff's Statement:**

163. The CRT met a second time immediately after, and Bradshaw testified that the meeting was "emotionally charged" and a "highly emotional environment." Tr. Bradshaw at 338. Mashpee did not provide any notes from the meeting and neither Dolan, Day, Farrell, nor Winrow could recall any specific information about the "emotionally charged" meeting.

**Defendants' Response:** The cited source does not support the statements contained in Paragraph 163 above, as required under Local Rule 56.1. Ms. Bradshaw did not testify the meeting was "emotionally charged." Otherwise, admitted.

**Plaintiff's Statement:**

164. The CRT neither drafted a plan for Jill nor referred Jill for an evaluation for special education services. After the revelation of the rape, the accommodations made available by Mashpee for Jill remained unchanged. *See* BSEA Decision, Ex. A of MSJ-Section 504/ADA Claims.

**Defendants' Response:** Disputed. The statement contained in Paragraph 164 fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Therefore, it should be disregarded. Further, the defendants dispute plaintiff's characterization of the CRT's role with respect to Jill Doe. Ms. Bradshaw testified at the BSEA Hearing, "The Crisis Response Team . . . our role really wasn't so much to work with [Jill]. She had been moved to people with expertise in that. We were working on how do we communicate this to the school community, those sorts of things. So we were responding to a

crisis. [Jill] was taken care of as best as she could have been taken care of that day and the days following." BSEA Tr. Bradshaw, p. 337-338.

**Plaintiff's Statement:**

165. By early March of 2009, Dolen and the entire CST were on notice that Jill had been raped by an employee of the school; that the rape occurred four months prior; that there was a significant violation of a trust relationship by an employee of the school and that such a violation had clinical implications for Jill; that Jill was struggling academically in a way that was inconsistent with her prior record; that she had attendance gaps; that she displayed oppositional behaviors in school; that she had peer issues in school; that she had anger issues in school; and that all of these issues were impacting her ability to access her education. BSEA Tr. Dolen, p. 84-85.

**Defendants' Response:** Disputed. The cited source does not support the statements contained in Paragraph 165 above, as required under Local Rule 56.1. The defendants also dispute plaintiff's characterization of John Dolen's testimony. The defendants also note Dolen was not asked about the collective knowledge of the CST. BSEA Tr. Dolen, p. 84-85.

**Plaintiff's Statement:**

166. The defendants knew that while Jill had been struggling prior to the rape, her issues worsened following the rape. *See* BSEA Decision, Ex. A of MSJ-Section 504/ADA Claims.

**Defendants' Response:** Disputed. The statement contained in Paragraph 166 fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Moreover, said statement does not set forth "material facts," but opinion. Therefore, the statement contained in Paragraph 166 should be disregarded. Further, the statement makes no distinction among the "defendants."

**Plaintiff's Statement:**

167. Dolen and the CST had knowledge that Jill had been provided general education accommodations starting in September of 2008, and increasing in October and November of 2008. They also had knowledge that those accommodations were not enabling Jill to access her education. Additionally, they knew about the rape and its serious ramifications for Jill's education. Rather than request an evaluation, Dolen and the CST continued providing the same general education services that were provided before the rape and subsequent disclosure, with the exception that Jill started Dolan's Anger Management Class that she was referred to in December, 2008. *See* BSEA Decision, Ex. A of MSJ-Section 504/ADA Claims.

**Defendants' Response:** Disputed. The statement contained in Paragraph 167 fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Therefore, the statement contained in Paragraph 167 should be disregarded. The defendants otherwise admit that Dolen and the CST did not request an evaluation for Jill in the Fall, 2008.

**Plaintiff's Statement:**

168. After the disclosure, Jill began to have difficulty with her peers in a way that she never had before, including physical altercations at school. In April of 2009, Jill was overly upset about peer relations and her relationships with a boy, to such an extent that she could not stay in her classes. She continued to spend much of her time in the guidance office. On April 16, 2009, Farrell called Mrs. Doe because Jill was failing her classes. IPR, p. 6, No. 7, Ex. C of MSJ-Section 504/ADA Claims.

**Defendants' Response:** Disputed. The defendants dispute plaintiff's characterization of Answer No. 7, cited above. The cited source does not support the statements contained in Paragraph 168 above, as required under Local Rule 56.1.

**Plaintiff's Statement:**

169. Once again, Farrell failed to request an evaluation. Instead, Farrell shifted responsibility to Jill by having Jill attend after school tutoring to catch up in her classes. Jill was unable to attend the tutoring in light of her emotional state. *See* BSEA Decision, 17, Ex. A of MSJ-Section 504/ADA Claims.

**Defendants' Response:** Disputed. The defendants dispute plaintiff's characterization of p. 17 of the BSEA Decision, cited above.

**Plaintiff's Statement:**

170. In the fall, Mrs. Doe asked Farrell whether such accommodations were available for Jill in her other classes. Farrell told Mrs. Doe that they were not available, on the basis that Jill did not qualify for special education. BSEA Tr. Doe, p. 271.

**Defendants' Response:** Admitted in part; denied in part. The cited source does not support the statements contained in Paragraph 170 above, as required under Local Rule 56.1. Ms. Doe's testimony concerned the Mashpee "PM Program" availability. BSEA Tr. Doe, p. 271-272. Further, the defendants dispute this statement above to the extent it contains inadmissible hearsay in the form of Jane Doe's BSEA Hearing testimony.

**Plaintiff's Statement:**

171. From September of 2009 through January, 2010, Jill's emotional health continued to deteriorate, and her deprivation of access to public education intensified, yet no additional

accommodations were proposed or suggested by the Defendants.  *See* BSEA Decision, 17-22, Ex. A of MSJ-Section 504/ADA Claims

**Defendants' Response:**  Disputed.  The defendants dispute plaintiff's characterization of p. 17-22 of the BSEA Decision, cited above.

**Plaintiff's Statement:**

172.  On November 12, 2009, Mrs. Doe called Farrell to ask about educational alternatives for Jill, particularly the Cape Cod Collaborative, which is a "therapeutic educational setting designed to provide a wide range of services to address education, behavior, and clinical concerns affecting the academic performance of students. Schools district referrals may be the result of students' truancy, poor relationships, anger and frustration, underdeveloped problem solving, mental health issues, severe discipline or any combinations of personal and environmental conditions that may contribute to an unsuccessful school experience." BSEA Tr. Doe, p. 271.

**Defendants' Response:**  Disputed.  The cited source does not support the statements contained in Paragraph 172 above, as required under Local Rule 56.1.  Ms. Doe testified she spoke with Ms. Farrell regarding the PM Program.  There is no reference to the Cape Cod Collaborative. BSEA Tr. Doe, p. 271-272.  Further, the defendants dispute this statement above to the extent it contains inadmissible hearsay in the form of Jane Doe's BSEA Hearing testimony.

**Plaintiff's Statement:**

173. Farrell informed Mrs. Doe that Jill would not qualify for the program because she was not a special education student, and that the Collaborative would not be appropriate for her, despite Jill's interest in the program. BSEA Tr. Doe, p. 271.

**Defendants' Response:** Disputed. The cited source does not support the statements contained in Paragraph 173 above, as required under Local Rule 56.1. Ms. Doe testified she spoke with Ms. Farrell regarding the PM Program. There is no reference to the Cape Cod Collaborative. Ms. Doe testified she was told Jill was not qualified for the PM program because she had not completed her tenth grade year. BSEA Tr. Doe, p. 271-272. Further, the defendants dispute this statement above to the extent it contains inadmissible hearsay in the form of Jane Doe's BSEA Hearing testimony.

**Plaintiff's Statement:**

174. Farrell again failed to inform Jane of her right to request an evaluation for Jill for special education services, or that the emotional issues that prevented her from accessing her education would qualify her for special education. While Farrell informed Mrs. Doe that she could speak with Dolen or Shea about the Collaborative, Mrs. Doe elected not to in reliance upon Farrell's professional opinion that Jill would not qualify for the program. BSEA Tr. Doe, p. 271.

**Defendants' Response:** Disputed. The cited source does not support the statements contained in Paragraph 174 above, as required under Local Rule 56.1. Ms. Doe did not testify as to Ms. Farrell informing her about speaking with Dolen or Shea about the Collaborative, as referenced. Ms. Doe testified she spoke with Ms. Farrell regarding the PM Program. There is no reference to the Cape Cod Collaborative. BSEA Tr. Doe, p. 271-272. Further, the defendants dispute this statement above to the extent it contains inadmissible hearsay in the form of Jane Doe's BSEA Hearing testimony.

**Plaintiff's Statement:**

175. On that same date, Mrs. Doe asked Farrell about the general education PM Program, a program that, much like Jill's summer school class, occurred in small classes led by an

instructor and involved computer programs to facilitate learning. Farrell had already given Jill's name to the CST for consideration in that program, but Jill did not have sufficient credits for consideration. Neither Farrell nor any other member of the CST informed Mrs. Doe that Jill was entitled to similar accommodations through special education. BSEA Tr. Doe, p. 272.

**Defendants' Response:** Admitted in part; disputed in part. The cited source does not support the statements contained in Paragraph 175 above, as required under Local Rule 56.1. The defendants dispute plaintiff's characterization of the BSEA testimony cited. BSEA Tr. Doe, p. 272. Further, the defendants dispute this statement above to the extent it contains inadmissible hearsay in the form of Jane Doe's BSEA Hearing testimony.

**Plaintiff's Statement:**

176. Weixler pleaded guilty to indecent assault of a minor regarding his sexual assault against Jill in December, 2009. He also pleaded guilty to distribution of obscene matter to a minor in connection with his texting of pictures of his penis to Jill, and the sale or delivery of liquor to a person under 21. BSEA Tr. Doe at 276.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

177. Jill's downward spiral intensified after the new year. Farrell testified that Jill's grades were "abysmal" by the end of her first semester, and she was not able to access her education at all as she was unable to come to school. Tr. Farrell, p. 167.

**Defendants' Response:** Admitted in part. The cited source does not support the statements relating to the "abysmal" comment. Further, Paragraph 177 contains inadmissible lay witness opinion that Jill's "downward spiral intensified," rather than material facts as required by Local Rule 56.1.

**Plaintiff's Statement:**

178. On January 18, 2010, Jill was admitted at Falmouth Hospital by her mother following the manifestation of significant symptoms of Post-Traumatic Stress Disorder ("PTSD") and other emotional difficulties. Jill assaulted a male stranger at a convenience store because he was "looking at her." Jill was experiencing severe symptoms of PTSD, including intrusive thoughts, flashbacks and nightmares. Discharge Summary, Ex. G of MSJ-Section 504/ADA Claims.

**Defendants' Response:** Admitted in part; disputed in part. The cited source does not support the statements contained in Paragraph 178 above, as required under Local Rule 56.1. The cited source does not indicate Jill manifested "significant" symptoms or that she was experiencing "severe" symptoms of PTSD.

**Plaintiff's Statement:**

179. In her testimony about the severe behavior which led to the hospitalization, Mrs. Doe recalled Jill's attempts to cut her wrists with a knife, and her efforts to physically restrain Jill in order to stop this behavior. Mrs. Doe drove Jill to Bethany Phillips, a social worker with the Department of Children and Families, who called mobile crisis. On January 21, 2010, Jill was placed in the Community Based Acute Treatment (CBAT) Unit at Saint Vincent's Home. Jane Doe Depo. 242.

**Defendants' Response:** Admitted. The defendants note, however, this is inadmissible hearsay from the BSEA Hearing. The defendants further state that they never observed nor did anyone (including Jane Doe) report to them that Jill had attempted to cut her wrists. *See, e.g.,* Day dep., pp. 273-274.

**Plaintiff's Statement:**

180. Jill was diagnosed with PTSD, Mood Disorder NOS, R/O Bipolar Disorder and polysubstance abuse dependence. St. Vincent's Home, Discharge Summary, Ex. G of MSJ-Section 504/ADA Claims. The discharge summary, which was provided to the School, noted that Jill responded well to the structure of her treatment. *Id.*

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

181. Jill was discharged by St. Vincent's on February 3, 2010. Mrs. Doe brought the discharge summary to the School and met with Farrell pleading for help from the school. The discharge summary was also forwarded to the members of the CST. In addition, Jane shared the details of the incident that led to Jill's hospitalization with Farrell. Neither Farrell nor any other member of the CST requested an evaluation for special education services, despite the clear diagnosis of emotional disabilities that confirmed Jill's need for a comprehensive special education evaluation. Instead, the defendants considered Jill's downward spiral an outside issue, and therefore not the responsibility of the School. Farrell recommended that Mrs. Doe continue to find an outside counselor for Jill. *See* BSEA Decision, 17-22, Ex. A of MSJ-Section 504/ADA Claims.

**Defendants' Response:** Disputed. The cited source does not support the statements contained in Paragraph 181 above, as required under Local Rule 56.1. The defendants also dispute plaintiff's characterization of pages 17-22 of the BSEA Decision, cited above. Further, Paragraph 181 contains inadmissible lay witness opinion regarding Jill's "downward spiral," and the "defendants'" alleged perceptions thereof, rather than material facts as required by Local Rule 56.1. Regarding the plaintiff's use of "the defendants," no member of the Mashpee School

Committee was a member of the CST. Nor were Ann Bradshaw or Alan Winrow. Affidavit of Alan Winrow, ¶ 3; Affidavit of John Dolen, ¶ 2.

**Plaintiff's Statement:**

182. After her discharge from St. Vincent's, Jill returned to Mashpee without any additional supports. *See* BSEA Decision, 20-22, Ex. A of MSJ-Section 504/ADA Claims.

**Defendants' Response:** Disputed. The Hearing Officer's decision noted "it would be speculative to make any determination as to what particular special education services should have been provided . . . ." The decision also noted, "Prior to the rape disclosure and for a number of months after the disclosure, [Mashpee] provided (through regular education) all of the services and accommodations that Student likely would have received under special education laws and Section 504."

**Plaintiff's Statement:**

183. By this time, rumors had circulated among the students that Jill had been locked up in a psychiatric ward. Upon return to school, Jill was further harassed, taunted and criticized by her peers. *See* BSEA Decision, 20, Ex. A of MSJ-Section 504/ADA Claims.

**Defendants' Response:** Disputed. Jill's claims arising out of allegations regarding peer harassment have been dismissed. Memorandum And Order, p. 16-17 (Document No. 63). Further, the cited source does not support the statements contained in Paragraph 183 above, as required under Local Rule 56.1. See BSEA Decision, 20, Ex. A of MSJ-Section 504/ADA Claims; *see also* Student 8 dep., p. 69. While people talked about Jill behind her back, it was nothing Student 8, a member of the Varsity Girls' Soccer Team, thought rose to a level of harassment or bullying. *Id*., p. 68. Student 5, a member of the J.V. Girls' Soccer Team, testified, "No one was really harassing her." Student 5 dep., p. 82.

**Plaintiff's Statement:**

184. By March, Mrs. Doe was unable to get Jill to come to school and Jill's behaviors continued to prevent her from accessing her education. Mrs. Doe reached out to Farrell. Notwithstanding Jill's eligibility for special education services or a Section 504 Plan, Farrell informed Mrs. Doe that there were no services available for Jill because the school did not currently have a program for sophomores. IPR, Ex. C of MSJ-Section 504/ADA Claims; *See also* BSEA Tr. Doe, p. 272-273.

**Defendants' Response:** Disputed. The defendants dispute plaintiff's characterization of the testimony referenced regarding Jane Doe's conversation with Patricia Farrell. Ms. Doe's testimony concerned the Mashpee "PM Program" availability. BSEA Tr. Doe, p. 271-272. Further, the defendants dispute this statement above to the extent it contains inadmissible hearsay in the form of Jane Doe's BSEA Hearing testimony. Further, the statement contained in Paragraph 184 fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation with respect to the citation to the "IPR," a 17-page document.

**Plaintiff's Statement:**

185. Left with no alternatives, Mrs. Doe was forced to seek alternatives for Jill's education outside the Mashpee school system.

**Defendants' Response:** The statement contained in Paragraph 185 fails to comply with Local Rule 56.1 in that it is not supported with page references to any affidavits, depositions, or other documentation. Therefore, it should be disregarded.

**Plaintiff's Statement:**

186. Upon applying for a CHINS Petition, DCF assigned Mrs. Doe an education advocate, Maureen Stanton. Ms. Stanton informed Mrs. Doe that Jill was entitled to an evaluation for special education services. On March 18, 2010, Mrs. Doe, with the assistance of Ms. Stanton, sent a written request that Mashpee evaluate Jill for eligibility for special education services or accommodations pursuant to the IDEA and/or Section 504. She sent another request on April 6, 2010. *Compl.* ¶ 86; See also BSEA Decision, 17, Ex. A of MSJ-Section 504/ADA Claims

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

187. In late March of 2010, as the result of the school's prior recommendation, the Does filed a CHINS petition and Jill was adjudicated a Child in Need of Services. Jill exhibited severe symptoms of PTSD, including an outburst at the court, which resulted in hospitalization at Arbor Fuller Hospital on April 7, 2010. See BSEA Decision, 20-21, Ex. A of MSJ-Section 504/ADA Claims

**Defendants' Response:** Admitted in part; disputed in part. The cited source makes no reference to "severe" symptoms of PTSD.

**Plaintiff's Statement:**

188. On April 16, 2010, Jill was transferred to the Germaine Lawrence Community Based Acute Treatment ("CBAT") Unit for stabilization and treatment. In light of Jill's severe emotional disabilities, her propensity to run away, and polysubstance abuse, the Does requested that Mashpee place Jill in a residential therapeutic school in order to protect her safety and

provide specialized educational services. *See* BSEA Decision, 21, Ex. A of MSJ-Section 504/ADA Claims

**Defendants' Response:** Admitted in part; disputed in part. The defendants dispute plaintiff's characterization of the cited source. Page 21 of the BSEA Decision indicates "parents do not want [Student] at home at this point;" "her family is resistant to having her home;" and "Parents urged that [Mashpee] provide a residential educational placement immediately so that Student would have continuous residential services." Otherwise, admitted.

**Plaintiff's Statement:**

189. On May 13, 2010, Mashpee refused such placement on the basis that Jill's needs were not severe enough to require a residential placement by the school. They relied on the Department of Children and Families, however, to effectuate a forty-five day placement after Jill was discharged from the CBAT Unit. Compl. at ¶ 91.

**Defendants' Response:** Admitted in part; disputed in part. The cited source makes no reference to "Mashpee['s]" alleged rationale for the refusal of such a placement. Otherwise, admitted.

**Plaintiff's Statement:**

190. On May 27, 2010, fourteen months after Jill disclosed that she was raped by Defendant Weixler, and eighteen months after Jill showed signs of trauma that prevented her from accessing her education, Mashpee determined, for the first time, that Jill was eligible to receive special education and related services. The Department of Children and Families, and not Mashpee, facilitated Jill's residential placement at Germaine Lawrence for purposes of a forty-five (45) day extended evaluation. Compl. at ¶ 92.

**Defendants' Response:** Admitted in part; disputed in part. The defendants dispute the statement's implication that Jill "showed signs of trauma that prevented her from accessing her

education" as of approximately January, 2009. *See* Affidavit of John Dolen, ¶ 3 (Document No. 122).

**Plaintiff's Statement:**

191. Based upon the results of the extended evaluation, and Jill's continued propensity to run away, the Parents again requested that Jill be placed in a therapeutic residential school. Mashpee refused the Parents' multiple requests for a residential therapeutic placement. See BSEA Decision, 23-24, Ex. A of MSJ-Section 504/ADA Claims

**Defendants' Response:** Disputed. The cited source does not support the statements contained in Paragraph 191 above, as required under Local Rule 56.1. In fact, the cited source directly contradicts the above statements. The BSEA Decision, p. 23, notes "[Mashpee]'s position was consistent with the treatment recommendations . . . from the 45-day evaluation." *Id.*, ¶ 71.

**Plaintiff's Statement:**

192. On July 2, 2010, Jill ran away from home and was gone for over a week. Compl. at ¶ 95.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

193. On July 8, 2010, Mashpee held an IEP meeting, and for the first time, agreed to fund a residential educational placement for Jill at the F.L. Chamberlain School. *See* BSEA Decision, 23, Ex. A of MSJ-Section 504/ADA Claims.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

194. Parents accepted this IEP and placement on July 14, 2010, and Jill was placed at Chamberlain on July 20, 2010. Compl. at ¶ 97.

**Defendants' Response:** Admitted.

**Plaintiff's Statement:**

195. On May 5, 2012, Jill turned eighteen. She signed herself out of the Chamberlain School. Since that time, she completed the PM program and the Defendants offered that Jill could accept her diploma. Because the acceptance of her diploma would effectively end any services provided by the school, and because Jill requires additional academic support and support to meet her social/emotional goals on her IEP, Jill opted not to graduate. After a number of emotional setbacks that are not relevant to this motion, Jill is now presently employed at a restaurant. Jill Doe Depo; p. 9-10 and participating in testing in preparation for the annual review of her IEP.

**Defendants' Response:** Admitted in part; denied in part. The cited source does not support the statements contained in Paragraph 195 above, as required under Local Rule 56.1. The defendants are aware of no evidence that would indicate Jill has been "participating in testing in preparation for the annual review of her IEP," aside from this sole statement. It is not supported by Jill's deposition testimony—or any other evidence of which the defendants are aware. *See also* Defendants' Local Rule 56.1 Concise Statement of Material Facts, ¶¶ 212-215.

**Plaintiff's Statement:**

196. After a nine day hearing, the BSEA (Crane, H.O.) made findings of fact and conclusions of law that the defendants acted with deliberate indifference and gross misjudgment

and are liable for compensatory damages under Section 504 of the Rehabilitation Act. BSEA Decision, Ex. A of MSJ-Section 504/ADA Claims.

**Defendants' Response:** Denied. The statement contained in Paragraph 196 fails to comply with Local Rule 56.1 in that it is not supported with page references to affidavits, depositions, and other documentation. Therefore, it should be disregarded. Further, the defendants dispute plaintiff's characterization of the BSEA findings regarding the "defendants" as a whole, in addition to the selective citation of these "findings" made by Hearing Officer Crane. At a minimum, Mr. Crane made no such "finding" with respect to the Mashpee School Committee.

**Plaintiff's Statement:**

197. The Hearing Officer found that in the fall (probably November) of 2008, Student was raped. As a result, she was seriously traumatized, particularly because she was raped by a person in a position of trust and authority and because the rape followed the death of her beloved cousin in July 2008. When Student disclosed the rape to Mashpee on March 12, 2009, Mashpee was immediately aware of the likely traumatizing effect of the rape; and Mashpee knew that since the beginning of the school year, Student had been struggling with emotional and behavioral difficulties, requiring accommodations and counseling and causing her grades to plummet. BSEA Decision, pp 59-60, Ex. A of MSJ-Section 504/ADA Claims.

**Defendants' Response:** Admitted in part; disputed in part. The defendants note this is one bullet point in a "summary of findings" the Hearing Officer noted in his sixty-one page decision; moreover, the term "Mashpee" is decidedly vague. As noted above, for example, the Mashpee School Committee, Ann Bradshaw and Alan Winrow were not members of the Child Study Team.

**Plaintiff's Statement:**

198. The hearing officer found that Mashpee violated child find requirements by failing to refer Student for an evaluation to determine eligibility under special education laws and Section 504 immediately after Student's disclosure of the rape on March 12, 2009. No evaluation occurred until after Parents requested an evaluation in March 2010. Thus, Student essentially lost one year of eligibility. BSEA Decision, pp 59-60, Ex. A of MSJ-Section 504/ADA Claims.

**Defendants' Response:** Admitted in part; disputed in part. The defendants note this is one bullet point out of six in a "summary of findings" the Hearing Officer noted in a sixty-one page decision. Hearing Officer Crane's decision also found that at all relevant times, those school officials most involved in Jill's education were motivated to help Jill and, through regular education, provided all of the services and accommodations Jill likely would have received under special education laws and Section 504, acting in good faith. *Id.* at p. 61.

**Plaintiff's Statement:**

199. The hearing officer found that Mashpee's failure to refer Student for an evaluation under child find in March 2009 cannot be supported by any accepted professional judgment or standard; Parents therefore satisfied the compensatory damages standards under Section 504. By February 2010, CBDE's continuing failure to refer Student for an evaluation, even after a residential psychiatric admission and diagnoses of PTSD and Mood Disorder (NOS), became a blatant disregard of Student's child find rights. BSEA Decision, pp 59-60, Ex. A of MSJ-Section 504/ADA Claims.

**Defendants' Response:** Disputed in part; admitted in part. *See* Response to SOF ¶ 198, above.

Respectfully Submitted,

The Defendants,
ANN BRADSHAW, ALAN WINROW,
JANE DAY, MASHPEE SCHOOL COMMITTEE,
AND THE TOWN OF MASHPEE,
By their attorneys,
**Pierce, Davis & Perritano, llp**

*/s/ Adam Simms*
John J. Davis, BBO #115890
Adam Simms, BBO #632617
John M. Wilusz, BBO #684950
90 Canal Street
Boston, MA 02114
(617) 350-0950
asimms@piercedavis.com
jdavis@piercedavis.com
jwilusz@piercedavis.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on September 9, 2015.

*/s/ Adam Simms*
Adam Simms